[No. B182068. Second Dist., Div. Seven. Mar. 14, 2007.]

JOSE REYES et al, Plaintiffs and Appellants, v.
VAN ELK, LTD., et al, Defendants and Appellants.

### COUNSEL

Herb Fox; Donahoo & Associates and Richard E. Donahoo for Plaintiffs and Appellants.

Cynthia L. Rice, Julie Montgomery, Amagda Perez and Jennifer Ambacher for California Rural Legal Assistance Foundation as Amicus Curiae on behalf of Plaintiffs and Appellants.

Karen C. Tumlin and Marielena Hincapie for National Immigration Law Center, Asian Pacific American Legal Center of Southern California, Bet Tzedek Legal Services, California Rural Legal Assistance, Inc., Legal Aid Foundation of Los Angeles and Legal Aid Society-Employment Law Center as Amicus Curiae on behalf of Plaintiffs and Appellants.

Muzi & Associates, Andrew C. Muzi and Dana L. Harris for Defendants and Appellants.

### OPINION

**WOODS, J.**—Plaintiffs Jose Reyes, Francisco Reyes, Jose Perez and Carlos Flores were employed by defendant Van Elk, Ltd. (Van Elk), on public works projects, which were allegedly subject to California's prevailing wage law.

(Lab. Code, §§[1] 1720–1861.) Plaintiffs sued Van Elk and others for failing to pay prevailing wages. The superior court granted summary judgment in favor of defendants on the grounds undocumented workers were precluded by the federal Immigration Reform and Control Act of 1986 (the IRCA) (8 U.S.C. § 1101 et seq.) and *Hoffman Plastic Compounds, Inc. v. NLRB* (2002) 535 U.S. 137 [152 L.Ed.2d 271, 122 S.Ct. 1275] from asserting such claims. The superior court also found the supremacy clause preempted California statutes declaring immigration status irrelevant to claims under California's labor, employment, civil rights and employee housing laws. Plaintiffs contend the IRCA and *Hoffman* do not preclude undocumented workers from asserting such claims and the California statutes are not preempted. Defendants contend the court erroneously denied their request for attorney's fees. We reverse the judgment and order the superior court to enter an order denying the motion for summary judgment.

## FACTUAL AND PROCEDURAL SYNOPSIS

Plaintiffs performed welding-related work for Van Elk on different construction projects in Los Angeles County. The causes of action alleged in the complaint include failing to pay prevailing wages,[2] breach of contract, recovery under public works payment bond, and unfair business practices. Plaintiffs later added as Doe defendants Fidelity and Deposit Company of Maryland (Fidelity), Fassberg Construction Company (Fassberg) and Morillo Construction, Inc. (Morillo). Van Elk was a subcontractor for Fassberg and Morillo on the subject projects. Fidelity provided the payment bonds for the subject projects.

Defendant Van Elk filed a motion for summary judgment/summary adjudication arguing that pursuant to the IRCA and *Hoffman*, plaintiffs did not have standing to sue because they were undocumented workers.[3] In support of the "undisputed fact" plaintiffs were undocumented, defendants cited plaintiffs' discovery responses affirming they were not born in the United States and had no Social Security numbers and plaintiffs' refusals to respond to discovery questions regarding citizenship, legal residency status, documented worker status, and work visa information.

Alternatively, defendants sought summary adjudication of their claim that several of the construction projects identified in the complaint were not

---

[1] Unless otherwise noted, all statutory references are to the Labor Code.

[2] Plaintiffs were paid wages, but not prevailing wages.

[3] At oral argument, the parties stated all defendants were before the court on the summary judgment motion. However, judgment was only entered in favor of three of the four defendants—Van Elk, Fidelity and Fassberg. Morillo was not named in the judgment. Accordingly, the issue of whether the general contractors should be dismissed may be raised in the superior court.

public works projects. Defendants also sought summary adjudication that the time plaintiffs spent "off-site" fabricating components to be installed at the construction projects was not governed by prevailing wage rates.

In opposition, plaintiffs invoked their statutory privilege to refuse to answer discovery questions regarding their immigration status. (See Lab. Code, § 1171.5; Civ. Code, § 3339; Gov. Code, § 7285.)

The court granted summary judgment against Jose Reyes and Carlos Flores in part finding their discovery responses constituted admissions they were not authorized to obtain employment in the United States. Plaintiffs objected to the court's proposed order.

After a hearing, the court filed a revised order granting summary judgment against all four plaintiffs, finding (1) under *Hoffman*, plaintiffs had no standing to assert their action, (2) the three statutes making immigration status irrelevant to certain claims were preempted by the supremacy clause of the United States Constitution, and (3) there was no disputed fact plaintiffs were undocumented as the evidence established each plaintiff had not been born in the United States and had no Social Security number, which shifted the burden to plaintiffs to introduce other evidence of authorization to work in the United States, and no such evidence had been adduced. The court denied summary adjudication on the basis it could not resolve discrete facts within a cause of action.

Plaintiffs filed a timely notice of appeal from the judgment entered after the court granted summary judgment. Defendants filed a timely notice of appeal from the order denying their request for attorney's fees.

## DISCUSSION

### I. *Introduction*

Defendants contend summary judgment was proper because they met their initial burden of showing all plaintiffs were undocumented. "On the grant of summary judgment, the appropriate standard of review is de novo." (*Schachter v. Citigroup, Inc.* (2005) 126 Cal.App.4th 726, 733 [23 Cal.Rptr.3d 920].)

Defendants argue plaintiffs did not have standing to bring their action as they were not in compliance with federal law, i.e., the IRCA. Thus, one issue presented by this appeal is whether an employee's undocumented status alone means he or she has no standing to bring an action for the payment of prevailing wages.

## II. *IRCA*

The United States Supreme Court stated "[w]e have often recognized that a 'primary purpose in restricting immigration is to preserve jobs for American workers.' " (*INS v. National Center for Immigrants' Rights, Inc.* (1991) 502 U.S. 183, 194 [116 L.Ed.2d 546, 112 S.Ct. 551].)

The IRCA " 'forcefully' made combating the employment of illegal aliens central to '[t]he policy of immigration law.' " (*Hoffman Plastic Compounds, Inc. v. NLRB, supra,* 535 U.S. at p. 147.) Among other things, the IRCA established an extensive "employment verification system" designed to deny employment to aliens who (a) are not legally present in the United States or (b) are not lawfully authorized to work in the United States. (8 U.S.C. § 1324a(a)(1), (h)(3).) It is a crime for an unauthorized alien to subvert the employer verification system by tendering false documents. (8 U.S.C. § 1324c(a).) Both employers and unauthorized aliens who violate the IRCA may be punished by civil fines and criminal prosecution. (*Hoffman, supra,* 535 U.S. at p. 148.)

"Under the IRCA, it is unlawful to hire or continue to employ an alien the employer knows to be an 'unauthorized alien,' defined as one who is not lawfully admitted for permanent residence, or authorized to be so employed by federal immigration and nationality law or by the United States Attorney General. (8 U.S.C. § 1324a(a)(1)–(2), (h)(1).) The statute provides for graduated civil penalties for violations, and criminal penalties for employers who are found to have engaged in a pattern or practice of hiring unauthorized aliens in violation of the law. (8 U.S.C. § 1324a(e)(4)–(5), (f)(1).) It is also a crime to knowingly accept a false immigration document for purposes of satisfying the requirements of the statute. (8 U.S.C. § 1324c(a)(2); 18 U.S.C. § 1546(b).)" (*Farmer Brothers Coffee v. Workers' Comp. Appeals Bd.* (2005) 133 Cal.App.4th 533, 538 [35 Cal.Rptr.3d 23].)

Several times in defendants' brief, they claim plaintiffs provided false documents to obtain employment.[4] The only "facts" listed in defendants' statement of facts in their summary judgment motion are that each plaintiff was "an undocumented worker not legally authorized to work in the United States." There is no "fact" that plaintiffs provided false documents. The only cited evidentiary support for the claim false documents were provided is in a response to a request for admission by Jose Perez. When Perez was asked if he provided false employment information to Van Elk, he objected, but

---

[4] The IRCA requires employers to verify that each new hire is authorized to work in the United States. The employee must present documents establishing his or her identity and employment authorization. (For list of acceptable documents see 8 U.S.C. § 1324a(b); 8 C.F.R. § 274a.2(b)(1)(v) (2007).)

admitted he had. False employment information is a vague term and could mean any number of things, including false information about an applicant's employment history, and does not necessarily mean the applicant submitted false work authorization documents.[5]

Thus, as presented to this court, this case does not involve a situation where undocumented workers submitted false work authorization documents to a prospective employer. (See, e.g., *Ulloa v. Al's All Tree Serv.* (Dist.Ct. 2003) 2 Misc.3d 262 [768 N.Y.S.2d 556, 558] ["The Court also notes in passing that, if there had been proof in this case that the Plaintiff had obtained his employment by tendering false documents (activity that is explicitly unlawful under IRCA), *Hoffman* would require that the wage claim [for unpaid wages] be disallowed in its entirety."].) However, the issue of whether *Hoffman* requires that a wage claim be denied if an employee submitted false authorization documents is not before this court.

### III. *Prevailing Wage Law*

■ "The conditions of employment on construction projects financed in whole or in part by public funds are governed by the prevailing wage law." (*Lusardi Construction Co. v. Aubry* (1992) 1 Cal.4th 976, 985 [4 Cal.Rptr.2d 837, 824 P.2d 643].)

"Section 1773 requires the public entity 'awarding any contract for public work, or otherwise undertaking any public work,' to obtain from the Director [of the Department of Industrial Relations] the general prevailing rate for each craft, classification or type of worker needed to execute the contract. The public entity must specify those rates in its call for bids, in bid specifications, and in the contract or, alternatively, must specify in those documents that the prevailing wage rates are on file in its principal office. (§ 1773.2.) [¶] A contractor for a public works project that fails to pay the prevailing rate to its workers is liable for the deficiency and is subject to a statutory penalty. (§ 1775.)" (*Lusardi Construction Co. v. Aubry, supra,* 1 Cal.4th at p. 986.)

The Legislature has declared that it is the public policy of California "to vigorously enforce minimum labor standards in order to ensure employees are not required or permitted to work under substandard unlawful conditions or for employers that have not secured the payment of compensation, and to protect employers who comply with the law from those who attempt to gain a

---

[5] One amicus curiae claims its clients regularly report that they are given documents and false names by the employers who hire them as a condition of employment. There is some indication in the record that Van Elk did not ask for employment authorization documents from plaintiffs.

competitive advantage at the expense of their workers by failing to comply with minimum labor standards." (§ 90.5, subd. (a).)

■ "It is well established that California's prevailing wage law is a minimum wage law." (*Road Sprinkler Fitters Local Union No. 669 v. G & G Fire Sprinklers, Inc.* (2002) 102 Cal.App.4th 765, 778 [125 Cal.Rptr.2d 804].) "The duty to pay prevailing wages is mandated by statute and is enforceable independent of an express contractual agreement. (§§ 1771, 1774–1775 . . . .) Thus, while the obligation to pay prevailing wages arises from an employment relationship which gives rise to contractual obligations and claims . . . , the duty to pay the prevailing wage is statutory. (§§ 1771, 1774.) [¶] For these reasons we conclude that, <u>because the prevailing wage law is a minimum wage law mandated by statute</u> and serves important public policy goals, section 1194 provides an employee with a private statutory right to recover unpaid prevailing wages from an employer who fails to pay that minimum wage."[6] (*Road Sprinkler*, at p. 779, citations omitted, underscoring added.)

■ "Earned but unpaid salary or wages are vested property rights." (*Loehr v. Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071, 1080 [195 Cal.Rptr. 576].) Noncitizens are guaranteed the same property rights as citizens. (Cal. Const., art. I, § 20.)

In determining that paying prevailing wages was a statutory obligation, one court noted: "The overall purpose of the prevailing wage law . . . is to benefit and protect employees on public works projects. This general objective subsumes within it a number of specific goals: to protect employees from substandard wages that might be paid if contractors could recruit labor from distant cheap-labor areas; to permit union contractors to compete with nonunion contractors; to benefit the public through the superior efficiency of well-paid employees; and to compensate nonpublic employees with higher wages for the absence of job security and employment benefits enjoyed by public employees." (*Lusardi Construction Co. v. Aubry, supra,* 1 Cal.4th at p. 987; see also *People v. Hwang* (1994) 25 Cal.App.4th 1168, 1177 [31 Cal.Rptr.2d 61] ["Prevailing wage legislation is intended to prevent government contractors from using ' "itinerant, cheap, bootleg labor." ' "].)

---

[6] Thus, defendants' contention that even if the IRCA and *Hoffman* do not apply, plaintiffs are not entitled to be paid the prevailing wage because such wages are a special remedy is without merit as paying prevailing wages is a statutory duty not a remedy. Even though in *San Francisco Labor Council v. Regents of University of California* (1980) 26 Cal.3d 785, 790 [163 Cal.Rptr. 460, 608 P.2d 277], the California Supreme Court noted "[p]revailing wage regulations are substantially different from minimum wage statutes," that statement was made in relation to prevailing wage requirements which were not applicable to the employer in that case. The prevailing wage law was applicable to defendants.

## IV. *Hoffman*

In *Hoffman*, the court concluded that allowing the National Labor Relations Board (NLRB) "to award backpay to illegal aliens would unduly trench upon explicit statutory prohibitions critical to federal immigration policy, as expressed in IRCA. It would encourage the successful evasion of apprehension by immigration authorities, condone prior violations of the immigration laws, and encourage future violations. However broad the Board's discretion to fashion remedies when dealing only with the NLRA [National Labor Relations Act], it is not so unbounded as to authorize this sort of an award." (*Hoffman Plastic Compounds, Inc. v. NLRB, supra,* 535 U.S. at pp. 151–152.) The court noted that awarding backpay[7] ran counter to the policies underlying the IRCA because it was for "years of work not performed, for wages that could not lawfully have been earned, and for a job obtained in the first instance by a criminal fraud." (535 U.S. at p. 149.) The court, however, noted the NLRB could impose other "significant sanctions" against an employer for its violation of the NLRA (National Labor Relations Act; 29 U.S.C. § 151 et seq.). (535 U.S. at p. 152.)

*Hoffman* concerned remedies available to undocumented workers under the NLRA and not their standing to file a claim before the NLRB. The Supreme Court reaffirmed the portion of its earlier holding in *Sure-Tan, Inc. v. NLRB* (1984) 467 U.S. 883 [81 L.Ed.2d 732, 104 S.Ct. 2803] that undocumented workers had standing to file claims under the NLRA and were considered "employees" under the NLRA. (*Hoffman Plastic Compounds, Inc. v. NLRB, supra,* 535 U.S. at pp. 149–150, fn. 4; see also *Martinez v. Mecca Farms, Inc., supra,* 213 F.R.D. at p. 604 [the court rejected a suggestion that *Hoffman* removed undocumented aliens' right to file charges with the NLRB, reasoning *Hoffman* "dealt with the remedies available to the undocumented, and not his right to file a charge with the NLRB"].)

In *Patel v. Quality Inn South* (11th Cir. 1988) 846 F.2d 700, 704, the court held the IRCA did not purport to limit remedies (for unpaid wages) available to undocumented aliens under the Fair Labor Standards Act of 1938 (FLSA; 29 U.S.C. § 201 et seq.) reasoning that if the FLSA did not cover undocumented aliens, employers would have an incentive to hire them. The court concluded the legislative history of the IRCA "strongly suggest[ed]" Congress believed undocumented workers would continue to be protected by state and federal wage laws. (*Patel,* at p. 704.) The court also noted the appropriation of additional funds in the IRCA for the increased FLSA enforcement on behalf of undocumented workers supported that supposition. (*Patel,* at

---

[7] "Back pay" "seeks to make an employee whole by awarding wages that would have been earned but for an unlawful firing." (*Martinez v. Mecca Farms, Inc.* (S.D.Fla. 2002) 213 F.R.D. 601, 604.)

p. 704.) The court reasoned that minimum wage laws supported the IRCA policy of reducing illegal immigration because such laws offset the most "attractive feature" of such workers—their willingness to work for less than the minimum wage. (*Patel*, at p. 704.) The court opined claims for wages for work already performed did not conflict with federal immigration policy. (*Id.*, at pp. 705–706.) Other courts agree that the IRCA did not foreclose all remedies for undocumented workers under FLSA, NLRA or other federal labor statutes. (See, e.g., cases cited in *Patel, supra*, 846 F.2d at p. 703 & fn. 4; *Mester Mfg. Co. v. I.N.S.* (9th Cir. 1989) 879 F.2d 561, 567; *Contreras v. Corinthian Vigor Ins. Brokerage, Inc.* (N.D.Cal. 1998) 25 F.Supp.2d 1053, 1056.)

Defendants argue *Hoffman* would prohibit plaintiffs' action for unpaid prevailing wages because there is no basis to restrict its reasoning to backpay as the court would have said so if it wanted to do so. The dissent in *Hoffman* noted the IRCA does not address the enforcement of other state laws. (*Hoffman Plastic Compounds, Inc. v. NLRB, supra*, 535 U.S. at pp. 154–155 (dis. opn. of Breyer, J.).)

Defendants cite three cases, which they claim support their position. Two of those cases note that *Hoffman* did not preclude an undocumented worker's claim for wages for work already performed. (*Crespo v. Evergo Corp.* (App.Div. 2004) 366 N.J. Super. 391 [841 A.2d 471, 475]; *Ulloa v. Al's All Tree Serv., supra*, 768 N.Y.S.2d at pp. 557–558.) In the third case, *Escobar v. Spartan Security Service* (S.D.Tex. 2003) 281 F.Supp.2d 895, 897, the court noted if *Hoffman* was viewed quite broadly, it would limit an undocumented worker's remedies under the Civil Rights Act, but stated the rationale for extending *Hoffman* to foreclose all the remedies claimed by the employee was not applicable because that employee had become documented. However, the court also noted that *Hoffman* "did not specifically foreclose all remedies for undocumented workers under either the [NLRA] or other comparable federal labor statutes." (*Escobar*, at p. 897.)

 In *Zavala v. Wal-Mart Stores, Inc.* (D.N.J. 2005) 393 F.Supp.2d 295, 325 the court concluded the FLSA did not preclude undocumented workers from obtaining relief for work already performed. The court was persuaded *Hoffman* did not prohibit such relief because, in contrast to *Hoffman*, the plaintiffs in *Zavala* were seeking unpaid wages for work already performed, the definition of "employee"[8] under the FLSA was broad and not limited to citizens, and post-*Hoffman* interpretations by the Department of Labor and post-*Hoffman* court decisions construed the FLSA to cover undocumented workers. (393 F.Supp.2d at pp. 322–325.) For much the same reasons, we are

---

[8] The prevailing wage law uses the general term "worker" and does not restrict workers to citizens.

persuaded that *Hoffman* does not prohibit plaintiffs from having standing to raise claims for prevailing wages as those claims are also for work already performed.

## V. *Preemption*

The superior court found that because there was no dispute plaintiffs were undocumented, the burden shifted to them to introduce evidence of their authorization to work in the United States. Plaintiffs argue that finding was improper under section 1171.5 and the other statutes declaring all residents of California are entitled to the protection of California's labor, employment, civil rights and employee housing laws regardless of immigration status.

Section 1171.5[9] reads, in relevant part:

"(a) All protections, rights, and remedies available under state law, except any reinstatement remedy prohibited by federal law, are available to all individuals regardless of immigration status who have applied for employment, or who are or who have been employed, in this state.

"(b) For purposes of enforcing state labor and employment laws, a person's immigration status is irrelevant to the issue of liability, and in proceedings or discovery undertaken to enforce those state laws no inquiry shall be permitted into a person's immigration status except where the person seeking to make this inquiry has shown by clear and convincing evidence that the inquiry is necessary in order to comply with federal immigration law.

"(c) The provisions of this section are declaratory of existing law."

■ Citing section 1171.5, one court observed, "Thus, if an employer hires an undocumented worker, the employer will also bear the burden of complying with this state's wage, hour and workers' compensation laws." (*Hernandez v. Paicius* (2003) 109 Cal.App.4th 452, 460 [134 Cal.Rptr.2d 756].)

■ " 'Article VI of the Constitution provides that the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." Art. VI, cl. 2. Thus, . . . state law that conflicts with federal law is "without effect." . . . Consideration of issues arising under the Supremacy Clause

---

[9] Civil Code section 3339 and Government Code section 7285 contain similar language, but include civil rights and employee housing laws under the protection afforded by section 1171.5, subdivision (b). The Legislature enacted those three statutes in response to *Hoffman*. (*Rivera v. NIBCO, Inc.* (9th Cir. 2004) 364 F.3d 1057, 1073.)

"start[s] with the assumption that the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress." . . .' . . . [¶] Examples of historic police powers include '[c]hild labor laws, minimum and other wage laws, laws affecting occupational health and safety, and workmen's compensation laws . . . .' . . . 'States possess broad authority under their police powers to regulate the employment relationship to protect workers within the State.' . . . 'Accordingly, " '[t]he purpose of Congress is the ultimate touchstone' " of pre-emption analysis. . . . [¶] Congress' intent may be "explicitly stated in the statute's language or implicitly contained in its structure and purpose." . . . In the absence of an express congressional command, state law is pre-empted if that law actually conflicts with federal law, . . . , or if federal law so thoroughly occupies a legislative field " 'as to make reasonable the inference that Congress left no room for the States to supplement it.' " ' " (*Farmer Brothers Coffee v. Workers' Comp. Appeals Bd.*, *supra*, 133 Cal.App.4th at pp. 538–539, citations omitted, underscoring added; see also *Cipollone v. Liggett Group, Inc.* (1992) 505 U.S. 504; 516 [120 L.Ed.2d 407, 112 S.Ct. 2608].)

"Power to regulate immigration is unquestionably exclusively a federal power. . . . But the Court has never held that every state enactment which in any way deals with aliens is a regulation of immigration and thus per se pre-empted by this constitutional power, whether latent or exercised." (*De Canas v. Bica* (1976) 424 U.S. 351, 354–355 [47 L.Ed.2d 43, 96 S.Ct. 933], citations & italics omitted.)

Citing *Sanango v. 200 E. 16th St Hous.* (N.Y.App.Div. 2004) 15 A.D.3d 36 [788 N.Y.S.2d 314], defendants argue the post-*Hoffman* statutes are pre-empted by the IRCA. Based on *Hoffman*, the *Sanango* court determined that state tort law, to the extent it permitted recovery for lost wages, was preempted by the IRCA. (788 N.Y.S.2d at pp. 316–317.) However, *Sanango* is inapposite as, like backpay, lost wages are for "wages that plaintiff allegedly would have been able to earn in the United States but for his injuries." (*Id.*, at p. 316.)

Because legislation providing for the payment of prevailing wages comes under the historic police powers of the state, the presumption is that legislation is not superseded by the IRCA. Defendants do not cite any provision in the IRCA preempting state wage and hour legislation. The only specific preemption provision prohibits state or local law from imposing civil or criminal sanctions upon those who employ unauthorized aliens. (8 U.S.C. § 1324a(h)(2).) That provision is irrelevant to the wage claims asserted by plaintiffs. Thus, the IRCA does not expressly preempt state wage laws.

In *Farmer Brothers*, the court determined California's Workers' Compensation Act did not conflict with the IRCA. (*Farmer Brothers Coffee v.*

*Workers' Comp. Appeals Bd., supra*, 133 Cal.App.4th at pp. 539–542.) "As it stated in its report prior to the passage of the IRCA, the House Judiciary Committee discerned no intention in the statute 'that the employer sanctions provisions of the bill be used to undermine or diminish in any way labor protections in existing law, or to limit the powers of federal or state . . . labor standards agencies . . . .' (H.R.Rep. No. 99-682(I), 2d Sess. (1986), reprinted in 1986 U.S. Code Cong. & Admin. News, p. 5662 . . . .)"[10] (*Farmer Brothers Coffee v. Workers' Comp. Appeals Bd., supra*, 133 Cal.App.4th at p. 539, citation omitted.) Moreover, as the IRCA does not contain provisions relating to the payment of wages, minimum or otherwise, Congress did not implicitly preempt prevailing wage laws by occupying that field. (*Farmer Brothers Coffee*, at p. 540; see also *Cipollone v. Liggett Group, Inc., supra*, 505 U.S. at p. 516.)

Defendants argue the post-*Hoffman* California statutes are in direct conflict with *Hoffman* as they prevent or frustrate the accomplishment of federal objectives. We conclude there is no actual conflict between the IRCA and the prevailing wage law as the state law is not an obstacle to the accomplishment and execution of the full purposes and objectives of the IRCA. (Cf. *Farmer Brothers Coffee v. Workers' Comp. Appeals Bd., supra*, 133 Cal.App.4th at p. 540; see also *Cipollone v. Liggett Group, Inc., supra*, 505 U.S. at p. 516.)

The ultimate goal of the IRCA is to control illegal immigration into the United States by prohibiting the employment of unauthorized aliens. (3A Am.Jur.2d (2005) Aliens and Citizens, § 25, p. 73; 8 U.S.C. § 1324a(a).) Allowing employers to hire undocumented workers and pay them less than the wage mandated by statute is a strong incentive for the employers to do so, which in turn encourages illegal immigration. The fact an employer pays a worker less than the prevailing wage suggests the employer knew the worker was undocumented. Moreover, it is not the public which benefits from the savings. Employers are awarded public works contracts based on bids—bids which provide for the payment of prevailing wages. When prevailing wages are not paid, it is the employer who pockets the difference just as if it had provided substandard materials to those promised in a contract. (See *People v. Hwang, supra*, 25 Cal.App.4th at p. 1177 ["If contractors . . . are permitted to win public works contracts based on their express written agreement to pay workers the prevailing wage, and if they then pay their workers far less than the prevailing wage, the entire statutory scheme [for prevailing wages] would be subverted"]; see also *Rivera v. NIBCO, Inc., supra*, 364 F.3d at p. 1072 ["Regrettably, many employers turn a blind eye to immigration status during the hiring process; their aim is to assemble a workforce that is both cheap to

---

[10] "Although a committee report is not dispositive of congressional intent . . . , it may be helpful in discerning it." (*Farmer Brothers Coffee v. Workers' Comp. Appeals Bd., supra*, 133 Cal.App.4th at p. 539, fn. 4, citation omitted.)

employ and that minimizes their risk of being reported for violations of statutory rights. Therefore, employers have a perverse incentive to ignore immigration laws at the time of hiring but insist upon their enforcement when their employees complain."].)

In *Hoffman*, the undocumented worker obtained employment by using false authorization documents; the court determined the award of backpay violated the IRCA because it provided wages for work not performed and for work that could not have been performed without violating the IRCA. (*Hoffman Plastic Compounds, Inc. v. NLRB, supra*, 535 U.S. at pp. 141, 149–150.) In contrast to *Hoffman*, the work at issue in the case at bar had already been performed. The *Hoffman* court concluded, "recognizing employer misconduct but discounting the misconduct of illegal alien employees, subverts [the IRCA]." (*Id.*, at p. 150.) Allowing employers to hire undocumented workers and pay them less than the prevailing wage would also subvert the IRCA by condoning and encouraging future violations by employers. Moreover, such awards do not condone future unauthorized work; rather they make it clear that employers should not be allowed to profit from employing undocumented workers and then exploiting them.

As one federal circuit court reasoned: "We recognize the seeming anomaly of discouraging illegal immigration by allowing undocumented aliens to recover in an action under the FLSA. We doubt, however, that many illegal aliens come to this country to gain the protection of our labor laws. Rather it is the hope of getting a job—at any wage—that prompts most illegal aliens to cross our borders. By reducing the incentive to hire such workers the FLSA's coverage of undocumented aliens helps discourage illegal immigration and is thus fully consistent with the objectives of the IRCA." (*Patel v. Quality Inn South, supra*, 846 F.2d at pp. 704–705; *Singh v. Jutla* (N.D.Cal. 2002) 214 F.Supp.2d 1056, 1062 [The FLSA "discourages employers from hiring such workers because it eliminates the employers' ability to pay them less than minimum wage or otherwise take advantage of their status"]; *Flores v. Amigon* (E.D.N.Y. 2002) 233 F.Supp.2d 462, 464 [If employers know they will not only be subject to civil and criminal penalties "when they hire illegal aliens, but they will also be required to pay them at the same rates as legal workers for work actually performed, there are virtually no incentives left for an employer to hire an undocumented alien in the first instance."].) Hence, the IRCA does not preempt California's prevailing wage law as the prevailing wage law removes a major incentive to hiring undocumented workers.

■ In conclusion, we hold that *Hoffman* and their undocumented status did not prohibit plaintiffs from having standing to raise their prevailing wage claim and that the prevailing wage law and the post-*Hoffman* statutes are not preempted by the IRCA. Accordingly, we reverse the judgment and the order

granting summary judgment and direct the superior court to enter an order denying the motion for summary judgment. We need not consider the cross-appeal from the order denying defendants' request for attorney's fees.

## DISPOSITION

The judgment is reversed with directions to enter an order denying the motion for summary judgment. Plaintiffs to recover costs on appeal.

Perluss, P. J., and Johnson, J., concurred.

The petition of defendants and appellants for review by the Supreme Court was denied June 13, 2007, S152133.