**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0157-23

SHEENA JONES,

     Plaintiff-Appellant,

v.

THE MENTOR NETWORK,[1]

     Defendant-Respondent.

_____

Argued January 15, 2025 – Decided April 8, 2025

Before Judges Currier and Marczyk.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-0091-21.

Mark R. Natale argued the cause for appellant (Malamut & Associates, LLC, attorneys; Mark R. Natale, of counsel and on the brief).

Janice G. Dubler argued the cause for respondent (Ogletree, Deakins, Nash, Smoak & Stewart, PC, attorneys; Janice G. Dubler and Yuliya Khromyak, on the brief).

_____

[1] REM New Jersey, Inc. was improperly named in the complaint as "The Mentor Network."

PER CURIAM

During the course of her employment with defendant, plaintiff made some complaints regarding several of defendant's employees. Believing defendant had retaliated against her for the complaints, she filed an action under the New Jersey Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14. Defendant moved for summary judgment, asserting plaintiff was statutorily barred from holding her position with defendant because of her prior drug conviction and her failure to disclose it, and because she had not established a prima facie case under CEPA. The trial court granted the motion. We affirm.

Defendant "operates group homes in New Jersey for intellectually and developmentally disabled individuals." The group homes offer services such as "on-call support, medication management, community integration, management of daily activities, structured activities, life skills development, and transportation." The homes "are staffed with hourly Direct Support Professionals (DSP), supervisory Home Managers, and other human service professionals who develop individualized service plans to help each individual resident." The homes are regulated under N.J.A.C. 10:44A.

Plaintiff applied for a DSP job in January 2019. As part of the application, plaintiff completed a "Criminal Disclosure Statement" in which she checked

2

"no" when asked "[h]ave you ever been convicted of a crime?" She also left blank the space asking her to describe any convictions. Plaintiff signed an "[e]mployee [s]tatement" certifying she was never "convicted of any '[c]rime(s) involving controlled substances or other like offenses.'" She also signed a document requiring a "sworn statement" that she had not been convicted of a crime. Plaintiff consented to a background check.

Plaintiff was hired in February 2019 as a DSP. She testified that her job duties included "[c]ooking, cleaning, transporting clients to appointments, and . . . disbursing medication."

Plaintiff initially worked at the Erial group home on a day shift. However, starting in November 2019, defendant determined it "did not need a full[-]time staff member on day shift at each home" as several residents were receiving services off-site during the day. Therefore, defendant began decreasing the number of full-time day shifts at its homes, including plaintiff's position at Erial.

Thereafter, defendant offered plaintiff several other positions. Although she initially accepted a day shift position at another home, she later turned down the offer and requested per diem status, explaining her car could not take the "wear and tear" of the forty-minute drive each way. She also turned down the

other shifts she was offered. Plaintiff was not aware of anyone being assigned to the day shift at Erial after she stopped working there.

In November 2019, plaintiff made complaints about two employees—her supervisor Eric Ferrer, and Heather Motley, a program director. The first complaint arose when plaintiff was scheduled to take a resident to an appointment and the van was not available. When Ferrer did not answer his phone, plaintiff called Glenda Delgado, defendant's area director. An investigation revealed Ferrer had taken the van to a facility for servicing.

Plaintiff also reported problematic issues to Delgado about information another employee told her and incidents she observed herself. Plaintiff told Delgado that the co-worker said Ferrer and Motley were dating, which was in violation of the no fraternization policy, Ferrer was misusing the residents' gift cards and defendant's credit card, and there was a mishandling of medication.

Regarding the medication misuse, plaintiff stated she sent Delgado photographs depicting a label bearing an Erial resident's name on top of another resident's medication. Although she observed this incident in November 2019, she waited until January 2020 to report it. Plaintiff testified the reason she waited was because she "didn't really know how to go about it."

A-0157-23

Plaintiff stated that when she complained to Motley about problems with Ferrer, nothing was done because the two were in a relationship. Plaintiff believed that all these incidents were violations of the laws against abuse and neglect.

Motley testified during her deposition that Ferrer is a family friend she has known for about thirty years. She stated she never reported to defendant that he was a family friend. Motley also denied that anyone ever raised any concerns to her regarding Ferrer, or the mishandling of medication or money.

Plaintiff's testimony was inconsistent regarding who she made complaints to, initially stating she only notified Delgado and at other times testifying she also notified Motley, Ferrer, and Zaniel Young, a program director, as well as defendant's executive director—Susan McCarthy.

Plaintiff testified she felt defendant retaliated against her after she confronted Ferrer and Motley about mishandling the residents' gift cards and money. She stated none of her co-workers wanted to work with her anymore and she felt isolated at work. She also testified her hours were cut, and she "couldn't work at certain . . . locations, [because] certain supervisors wouldn't allow [her] to work at their home." She stated her job duties were either taken away or she felt she was given undesirable job duties. Despite her prior

A-0157-23

explanation, plaintiff said she changed her hours from full time to per diem because of the retaliation she experienced. She asserts the retaliation led her to suffer an anxiety attack.

In January 2020, after a routine audit, plaintiff was told there was an issue with her background check, and she could not work until the issue was resolved. Susan McCarthy testified during her deposition that the issue was not specific to plaintiff; it impacted several other workers as well. McCarthy explained that plaintiff was fingerprinted during her background check, but the State never sent defendant the documentation clearing her to work for the company. That error was not discovered until the routine audit was conducted. McCarthy stated plaintiff was paid for the time she was unable to work.

Plaintiff testified that she later called human resources (HR), who told her the issue was resolved, and she could return to work. However, she says she was never put back on the schedule. HR suggested she contact her supervisor. Plaintiff testified she believed she was terminated at that point because she was not being assigned shifts and "was getting tossed around." She described it as a "silent[] terminat[ion]."

On January 17, 2020, the program supervisor at another of defendant's group homes emailed the regional director and Delgado stating:

A-0157-23

Good morning,

My staff has made me aware that [plaintiff] stop[ped] by the group home last night. Stating that she left a charger at the group home from her previous shift but that came to be not true[.] [M]y staff stated that she actually wanted to talk about her being off [the group home's] schedule (which they knew nothing about) and about the pending investigation going on at Erial Group Home. My staff does not want to be involved but they are uncomfortable and concerned with her [presence] at [this group home] and I am as well.

In February 2020, plaintiff applied to and was hired by another organization as a medical DSP.[2] On March 2, 2020, plaintiff sent a message to Young, stating, "I am ONLY interested in maintaining the 16 h[ou]rs a month, in order for me to uphold my position as a Sub/per diem." She wrote Young again later that month advising "[her] children are in remote learning and unfortunately [she] h[as] no one to step up during [her] absence," as explanation of why she had not taken any shifts offered by defendant.

In May 2020, plaintiff began yelling at one of defendant's staff members at a grocery store. The police were called. Defendant attempted to contact plaintiff about the incident, but she did not respond to their requests. On May 19, 2020, defendant terminated plaintiff.

---

[2] In light of the COVID-19 pandemic, this position was eliminated before plaintiff started the job.

After the filing of this lawsuit, defendant discovered that plaintiff was arrested in Pennsylvania in January 2009 for possession of heroin with intent to distribute. Plaintiff pled guilty to the offenses in June 2009. She was sentenced to prison in April 2010 and remained in jail until at least July 2014. She testified she could not remember either the dates or how many years she spent in prison. When asked about her answers on the application regarding convictions, plaintiff testified she did not think accepting a plea deal constituted being convicted of a crime, so she answered "no." McCarthy testified that defendant would not have hired plaintiff had it known about her convictions. She also advised defendant had terminated other employees after learning they had not disclosed criminal convictions.

Discovery also revealed that plaintiff was a witness in the 2014 trial of her husband's murderer. The judge in that case found plaintiff not credible. During her deposition in this matter, she stated a court had never found her to not be credible. Also, during the deposition, plaintiff responded, "I do not recall" to many questions, including "[h]ow many days this week have you been at your mother-in-law's house in Philadelphia?" and to another question asking where she went to prison.

A-0157-23

As stated, plaintiff filed a complaint against defendant alleging retaliation in violation of CEPA. Following discovery, defendant moved for summary judgment, alleging plaintiff was statutorily barred from employment with defendant under N.J.S.A. 30:6D-64(b)(1)(c) because of her drug conviction and her untruthful answers about her criminal history in her employment application, and she failed to satisfy a prima facie claim under CEPA. The court granted the motion, finding plaintiff was statutorily barred from employment with defendant and did not establish the elements of a CEPA cause of action.

On appeal, plaintiff asserts she was not statutorily barred from holding employment with defendant and she demonstrated a prima facie CEPA case. We disagree.

We review the trial court's grant or denial of a motion for summary judgment de novo, applying the same standard used by the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). Rule 4:46-2(c) provides that a motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." The court must "consider whether the competent evidential materials presented, when

9

viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Padilla v. Young Il An, 257 N.J. 540, 547 (2024) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)).

"To decide whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)).

"Summary judgment should be granted, in particular, 'after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman, 242 N.J. at 472 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

We begin with the controlling statute—N.J.S.A. 30:6D-64—which provides, in pertinent part:

> (b) An individual shall be disqualified from employment under P.L.1999, c.358 (C.30:6D-63 et seq.) . . . if that individual's criminal history record background check reveals a record of conviction of any of the following crimes and offenses:
>
> (1) In New Jersey, any crime or disorderly persons offense:

. . .

(c) A crime or offense involving the manufacture, transportation, sale, possession, or habitual use of a controlled dangerous substance as defined in the "New Jersey Controlled Dangerous Substances Act," P.L.1970, c.226 (C.24:21-1 et seq.).

(2) In any other state or jurisdiction, of conduct which, if committed in New Jersey, would constitute any of the crimes or disorderly persons offenses described in paragraph (1) of this subsection.

. . .

(f) Notwithstanding the provisions of subsection b. of this section to the contrary, no individual shall be disqualified from employment . . . on the basis of any conviction disclosed by a criminal history record background check performed pursuant to sections 2 through 7 of P.L.1999, c.358 (C.30:6D-64 through C.30:6D-69) if the individual has affirmatively demonstrated to the department, clear and convincing evidence of the individual's rehabilitation. In determining whether an individual has affirmatively demonstrated rehabilitation, the following factors shall be considered:

(1) the nature and responsibility of the position which the convicted individual would hold, has held or currently holds, as the case may be;

11

(2) the nature and seriousness of the offense;

(3) the circumstances under which the offense occurred;

(4) the date of the offense;

(5) the age of the individual when the offense was committed;

(6) whether the offense was an isolated or repeated incident;

(7) any social conditions which may have contributed to the offense; and

(8) any evidence of rehabilitation, including good conduct in prison or in the community, counseling or psychiatric treatment received, acquisition of additional academic or vocational schooling, successful participation in correctional work-release programs, or the recommendation of those who have had the individual under their supervision.

Plaintiff pleaded guilty to criminal charges under 35 Pa. Stat. § 780-113(a)(30), (16) and 18 Pa.C.S. § 903(a)(1), the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance, knowingly or intentionally possessing a controlled or counterfeit substance, and criminal conspiracy, for which plaintiff served time in prison. Plaintiff does not dispute these are disqualifying offenses under N.J.S.A. 30:6D-64 to prohibit

12

employment with defendant. Instead, she contends there is an exception to the employment bar. However, plaintiff did not apply for the statutory exception.

Moreover, plaintiff lied about the convictions on her employment application, saying she was never convicted of a crime. When deposed, she stated the question was "misleading" and "tricky," and she did not think her convictions were subject to disclosure. She also lied on several other documents, continuing to assert she had no prior criminal convictions.

After concluding plaintiff was statutorily barred from employment with defendant, the trial court turned its focus to whether plaintiff could pursue a CEPA claim. Although defendant urged the court to find plaintiff could not pursue her case as articulated in Cedeno v. Montclair State University, 163 N.J. 473 (2000), the court nevertheless considered the facts presented by plaintiff and concluded she had not established a prima facie case of retaliatory action.

The court found plaintiff's allegations of wrongdoing were "amorphous" and there was no retaliatory action. The court noted when plaintiff was taken off the schedule to resolve the fingerprinting issue, other employees were affected as well. In addition, she was paid for the time she missed. Furthermore, plaintiff turned down numerous offers by defendant for shifts and continued employment. The court said:

13

> Even looking at everything that [plaintiff] has said . . . and giving [her] all of the reasonable inferences, it doesn't rise to the level of egregious conduct that would overcome the fact that she's statutorily barred. It's a weighing. . . . <u>Cedeno</u> . . . said it very clearly. . . .we're going to weigh it. If it's an egregious harassment situation, regardless of the fact that the person is barred from employment they shouldn't have to endure that. I don't find that that's the case here at all. And I also find that her conduct is well worse than [in <u>Cedeno</u>]. I do find that she's statutorily barred. And I do find that she lied.

In <u>Cedeno</u>, after the plaintiff was discharged from his position at Montclair State University, he instituted a claim for retaliatory discharge under CEPA. <u>Id.</u> at 476-77. The plaintiff failed to disclose a prior conviction for bribery that disqualified him from holding the position. <u>Id.</u> at 477. The Court weighed the public policy value of allowing the plaintiff to pursue the claim against the public policy preventing a person statutorily barred due to the prior conviction from holding the position. <u>Id.</u> at 478. The Court stated: "In view of the quality of proofs in this action, we believe that whatever value may be achieved by permitting [the] plaintiff's case to proceed to trial is outweighed by the policy against allowing that same person to obtain public employment after having been convicted of [a crime]." <u>Ibid.</u> The Court found "[the] plaintiff failed to allege sufficient egregious conduct or severity of harm to overcome the

14

high hurdle of the Forfeiture Statute, which otherwise mandates his discharge." Id. at 479.

In Crespo v. Evergo Corp., 366 N.J. Super. 391, 400-02 (App. Div. 2004), we applied the Cedeno public policy weighing process to a private employment scenario and found the plaintiff was barred from all relief.

We are satisfied the trial court properly considered the applicable statute and case law and found defendant's conduct, if there was indeed any wrongdoing, was not egregious to a degree that outweighed the public policy prohibiting plaintiff from employment with defendant.

Consequently, although we need not reach the merits of plaintiff's CEPA action, we will do so for completeness.

To establish a prima facie CEPA claim, a plaintiff must demonstrate:

> (1) [they] reasonably believed [their] employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) [they] performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3(c); (3) an adverse employment action was taken against [them]; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.
>
> [Lippman v. Ethicon, Inc., 222 N.J. 362, 380 (2015).]

"The mere fact that [an] adverse employment action occurs after [the protected activity] will ordinarily be insufficient to satisfy the plaintiff's burden of

15

demonstrating a causal link between the two." Young v. Hobart W. Grp., 385 N.J. Super. 448, 467 (App. Div. 2005) (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997)).

"[I]n order to survive summary judgment . . . [the non-moving party] need only point to sufficient evidence to support an inference that the employer did not act for its proffered non-discriminatory reasons." Kelly v. Bally's Grand, Inc., 285 N.J. Super. 422, 431-32 (App. Div. 1995).

Plaintiff asserts she reasonably believed defendant's conduct violated New Jersey law and regulations, she made complaints about the conduct to her superiors, and she was retaliated against for the complaints when her hours were cut, and she was not given shifts at certain homes.

Here, plaintiff met the first and second prongs of CEPA because she performed whistleblowing activity by reporting the conduct she believed to be a violation of the law, rule or regulations to Delgado. As to the third CEPA prong, it is debatable whether she established an adverse action since she was offered positions at defendant's other homes including a job identical to the one she previously held. Plaintiff rejected all of the offers of continued employment. Moreover, she accepted employment with another company.

A-0157-23

Regardless, plaintiff cannot meet the fourth prong as she has not demonstrated a causal connection between the whistleblowing activity and what she asserts to be an adverse employment action—the cutting of her hours and a hostile work environment. As the trial court noted, defendant articulated legitimate non-discriminatory reasons for the elimination of the day shift and the removal of plaintiff from the schedule while it awaited the completion of the fingerprinting process.

Plaintiff made complaints in November 2019 and January 2020 regarding an issue she alleges occurred in November 2019. Although her hours were cut in late November 2019, she was offered multiple other identical positions thereafter. She was compensated for time she was unable to work while defendant resolved the fingerprinting issue. Plaintiff was eventually terminated but not until the incident that occurred at a store when plaintiff verbally attacked another of defendant's employees prompting a police response. Plaintiff has shown no conduct by defendant that could establish there was any causal connection between her complaints and her termination many months later. As the trial court stated: "[Plaintiff] refused plenty of opportunities that were given to her by [defendant] . . . they certainly weren't retaliating if they were offering

A-0157-23

her positions." The trial court did not err in finding plaintiff failed to establish a prima facie claim under CEPA.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division