Carmelina **MARTINEZ**, Jorgelia Valasquez, Esther Ramos, and Maria Ester Escobar Torres, Maria Jose Alarcon, and Luis A. Roca,individually and on behalf of all others similarly situated, Plaintiffs,

v.

**MECCA FARMS, INC.**, Medrano Harvesting & Packing, Inc., Maria Medrano, Candido Munuz, Inc., Candido Munuz, and A–Z Grading & Packing, Inc., Defendants.

No. 01–9096–CIV.

United States District Court,
S.D. Florida.

Nov. 25, 2002.

Motion to Alter, Amend, or Reconsider Denial of Contempt Proceedings. (*Crum* Doc. no. 486; *Frazer* Doc. no. 601).

Cathleen Caron, Gregory Scott Schell, Florida Legal Services, Migrant Farmworker Justice Project, Lake Worth, FL, for plaintiffs.

Henry S. Wulf, Joseph Ianno, Jr., Carlton Fields, LLP, West Palm Beach, FL, for Mecca Farms, Inc.

Don R. Boswell, Akers & Boswell P.A., Palm Beach, FL, for Medrano Harvesting & Packing, Inc., Maria Medrano, Candido Packing, Inc., Candido Munoz, Inc., Candido Munoz, and A–Z Grading & Packing, Inc.

### ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

MIDDLEBROOKS, District Judge.

THIS CAUSE comes before the Court upon the Plaintiffs' Motion for Class Certification (DE # 34), filed on May 20, 2002. The Court has been fully briefed and is otherwise aware of the premises. After reviewing the record and the parties' submissions, it is the Court's determination that the Plaintiff's motion should be GRANTED.

#### Background

This is an action by six agricultural workers who claim that the defendants violated the Migrant and Seasonal Agricultural Worker Protection Act ("MPSA" or "AWPA") during plaintiffs' employment at defendant Mecca Farms' Lantana, Florida packing houses. They seek to certify two classes under Fed. R.Civ.P. 23(b)(3): (1) a "tomato class" comprised of migrant workers employed at Mecca Farms, Inc.'s (Mecca) tomato packing house from October, 1996 through March, 2002, and (2) a "pepper class" comprised of migrant workers employed at Mecca Farms' chili pepper packing house during the same time period.

The packing house workers (who grade and pack the vegetables) were paid on an hourly basis for their work. Each worker was issued a time card, which was punched just before the worker went to his or her station on the "line" and punched when the worker left the "line" for meal breaks, for mechanical breakdowns, or at the end of the work day. Each week, Mecca would provide a contractor service report for defendants Maria Medrano and Candido Muniz, the labor contractors who recruited and hired most of the workers in the packaging houses. Plaintiffs claim that at the pepper house, the time registered on the time clock automatically totaled the hours worked on a daily basis, but that at the tomato house Mecca computed an employee's time worked based on an estimate of the "belt time," or the time the "line" for grading the produce was operational.

Plaintiffs assert that none of the workers in either packing house were paid overtime wages, despite working over 40 hours during a number of pay periods. They claim that they are entitled to such pay. In addition, they complain that the employee Social Security taxes that were deducted from their wages were never paid to the government, but were simply retained by the labor contractors. This led to the payroll records being inaccurate. Finally, they challenge several timekeeping practices. They believe they should be paid for the elapsed work time shown on their time cards, rather than by the "belt time." In addition, the tomato house workers seek compensation for the time they sat idle at the packing house, waiting for authorization to "punch in" to the time clock, and for the periods they were forced to remain at the packing hose awaiting mechanical repairs.

## Discussion

According to the Federal Rules of Civil Procedure, one or more members of a class may sue or be sued as representative parties on behalf of all only if:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a); *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 n. 9 (11th Cir.1997). Before proceeding to a discussion of the four class action prerequisites individually with regard to the facts of this case, the court must first address a standing challenge the Defendant has raised.

■ Defendant argues that as per *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 122 S.Ct. 1275, 152 L.Ed.2d 271 (2002), plaintiffs, as undocumented aliens, are precluded from recovering the remedies they seek under the MPSA. In *Hoffman*, a group of employees began a union organizing campaign at a plastic production plant. The plant employer, recognizing these employees as union organizers, terminated their employment in order to subvert the union organizing effort, in violation of § 8(a)(3) of the National Labor Relations Act ("NLRA"). The National Labor Relations Board ("NLRB") ordered their reinstatement with back pay. The Supreme Court reversed the Board's back pay award, finding that the Board's position "discounting the misconduct of illegal alien employees" subverted the purpose of the Immigration Reform and Control Act ("IRCA"). Defendant presents the case to suggest a mandate that courts "give due regard for Congress' clear and unequivocal policy pronouncements with respect to the employment of unlawful aliens." (Defendant's Response at 13).

Defendant's reading of *Hoffman* with regard to this case is flawed for a number of reasons. Defendant suggests that *Hoffman* removed undocumented aliens' right to charges with the NLRB, and therefore, undocumented farmworkers similarly had no standing to sue under the MPSA. However, the *Hoffman* court dealt with the remedies available to the undocumented, and not his right to file a charge with the NLRB. In fact, the right of undocumented aliens to bring suit under the NLRA was upheld in *Sure–Tan Inc. v. NLRB*, 467 U.S. 883, 104 S.Ct. 2803, 81 L.Ed.2d 732 (1984), where the Supreme Court stated "[s]ince undocumented aliens are not among the few groups of workers expressly exempted by Congress [in the NLRA] they plainly come within the broad statutory definition of 'employee.'" *Sure–Tan, Inc.*, 467 U.S. at 892, 104 S.Ct. 2803. *Hoffman* preserves *Sure–Tan* in part by stating that "[o]ur first holding in *Sure–Tan* is not at issue here." *Hoffman*, 122 S.Ct. at 1284 n. 4.

More importantly, in its analysis of *Hoffman*, Defendant fails to make an important distinction between post-termination "back pay" and other forms of remuneration. Back pay seeks to make an employee whole by awarding wages that would have been earned but for an unlawful firing. *Hoffman* treats this as wages for "years of work not performed, for wages that could not lawfully have been earned, and for a job obtained in the first instance by unlawful fraud." *Id.* at 1283. The Plaintiffs in this case do not seek post-termination back pay; they seek remedies for work already performed.

Courts have distinguished back pay from remedies for uncompensated labor. The Eleventh Circuit has stated that an undocumented plaintiff was "entitled to the full range of available remedies under the FLSA without regard to his immigration status because he was not attempting to recover back pay but for work already performed." *Patel v. Quality Inn South*, 846 F.2d 700, 705–06 (11th Cir.1988). The Seventh Circuit reached also called attention to the distinction in *Del Rey Tortilleria, Inc. v. NLRB*, 976 F.2d 1115, 1122 n. 7 (7th Cir.1992). In fact, courts addressing this issue of whether defendants should be allowed to discover plaintiff-workers' immigration status in cases seeking unpaid wages brought under the FLSA have found such information to be

undiscoverable. *See In re Reyes,* 814 F.2d 168 (5th Cir.1987).

As such, the Circuit Courts to have addressed the issue have found that a distinction exists between back pay and uncompensated labor.[1] In this case, as it is clear that the Plaintiffs are bringing suit to challenge the compensation for work *already performed,* Defendant's standing challenge fails.

### 1. Numerosity and impracticability of joinder

■ Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." No definite standard exists as to what size class satisfies the requirements of Rule 23(a). *See Hively v. Northlake Foods, Inc.,* 191 F.R.D. 661, 666 (M.D.Fla.2000). Generally, a class should have no fewer than 21 members, and will generally satisfy the numerosity requirement if it has more than 40. *See, e.g. Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir.1986). The court may make commonsense assumptions in order to find support for numerosity. *Evans v. United States Pipe and Foundry Co.,* 696 F.2d 925 (11th Cir.1983).

■ Based on the information presented, the proposed classes satisfy the numerosity requirement of Rule 23(a)(1). Medrano supplied 59 or 60 workers daily to the tomato house. (Medrano Dep. at 21). Though the daily numbers seemed to vary (Munoz Dep. at 10–12), Munoz supplied approximately 1,000 employees each season to both packing houses. The Defendants do not challenge this information.

### 2. Common questions of law and fact

■ Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Not all questions of law or fact need be common to all plaintiffs. *Powers v. Government Employees Ins. Co.,* 192 F.R.D. 313, 317 (S.D.Fla.1998).

■ The clearest common question of fact in this matter is whether Defendant Mecca Farms, Inc. was the Plaintiffs' employer. In its Answer, Defenses, and Affirmative Defenses, Mecca denied that it employed the Plaintiffs and the other workers furnished by the labor contractors. If Mecca did not "employ" the packing house workers within the meaning of the AWPA, Mecca has no liability in this action. *See Haywood v. Barnes,* 109 F.R.D. 568, 576 (E.D.N.C.1986)(commonality established where a "central issue" concerned the defendant grower's status as an employer of the plaintiffs); *Kelly v. Sabre-Tech, Inc.,* 195 F.R.D. 48, 53 (S.D.Fla.1999)(common questions included whether defendant was an employer within the meaning of the Worker Adjustment and Retraining Notification Act).

Both classes seek relief for the Defendants' failure to deposit Social Security taxes with the Internal Revenue Service. There is a common legal question as to whether this constituted a violation of the AWPA. *See, e.g. Saintida v. Tyre,* 783 F.Supp. 1368 (S.D.Fla.1992)(holding that failure to deposit Social Security taxes violates AWPA's wage payment provisions).

Both classes seek to recover overtime wages. Whether the Defendants are exempt from the overtime requirements of the Fair Labor Standards Act, 29 U.S.C. § 207(a)(1999), is a legal issue common to all of the workers.

Finally, the tomato house plaintiffs assert several allegations which contain questions relevant to their class specifically. First, the tomato plaintiffs assert that Mecca Farms' practice of compensating them in accordance with "belt time" violates the AWPA. Second, the tomato plaintiffs seek to be compensated for the time they spent waiting to "punch in" to the time clock at the beginning of the work day. Whether this time is compensable under the AWPA is a question of law common to all tomato house workers.

As Plaintiffs have demonstrated (once again with no contrary argument by the Defendants)[2], common legal and factual ques-

---

1. Two recent District Court decisions have similarly drawn the distinction. *See Liu v. Donna Daran Int'l, Inc.,* 207 F.Supp.2d 191 (S.D.N.Y. 2002); *Flores v. Albertsons, Inc.,* No.

CV0100515AHM (SHX), 2002 WL 1163623 (C.D.Cal. Apr.9, 2002).

2. Defendants only address the issue of commonality in passing, in the context of a discussion of

tions exists with regard to all of the Plaintiffs.

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The class representative must possess the same interest and suffer the same injury as the class members. *Murray v. Auslander,* 244 F.3d 807, 811 (11th Cir. 2001); *Prado–Steiman ex rel. Prado v. Bush,* 221 F.3d 1266, 1279 (11th Cir.2000). The claims of the class representatives are typical if they may reasonably be expected to be raised by members of the proposed class. *See In re Commercial Tissue Prods.,* 183 F.R.D. 589, 593 (N.D.Fla.1998). The claims of the representative parties need to be similar enough to those of the class so the representatives can represent the class adequately. *See Powers v. Stuart–James Co.,* 707 F.Supp. 499, 503 (M.D.Fla.1989).

Neither party gives any indication that various members of the putative class have differences sufficient to defeat the typicality requirement. Once again, there is no indication that any member of the class has been treating differently, or has interests that are significantly different from any other class member. If evidence demonstrates that Mecca employed the named Plaintiffs, the same evidence will necessarily demonstrate the other workers on the packing house line were similarly employed. Any claims relevant to the representatives will also be relevant to the class as a whole.

### 4. Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties...fairly and adequately protect the interests of the class." The class representatives' interests should not be antagonistic to those of the class members. *See Pickett v. Iowa Beef Processors,* 209 F.3d 1276, 1280 (11th Cir.2000).

Mecca challenges both typicality and adequacy of representation because of the immigration status of the class representatives. Mecca suggests that because the named Plaintiffs could be subject to deportation or could be distracted by the possibility of deportation. As a result, Mecca argues, the representatives will not be able to adequately represent the interests of the class. Such an argument fails. The court may "take into account outside entanglements that render it likely that the representative may disregard the interests of the other class members." *Blum v. Morgan Guaranty Trust Co. of New York,* 539 F.2d 1388, 1390 (5th Cir.1976). Mecca argues that the immigration status of the Plaintiffs is one such outside entanglement. In support, Defendant relies on *Hagen v. City of Winnemucca,* 108 F.R.D. 61 (D.Nev.1985), in which the plaintiff, a citizen of Great Britain and a former City of Winnemucca prostitute, sought to bring a class action on behalf of all Winnemucca prostitutes. The court found the plaintiff's possible deportation a possible entanglement. However, the court did not suggest that a deportable alien was inherently unfit to be a class representative. The court denied certification because the plaintiff's deportation could have been used against her as a defense, *a defense not available to the other class members. Id.* at 65. In sum, the fact that the plaintiff had interests that clearly differed from other class members defeated certification.

Such is not the case here. Undocumented individuals have been allowed to represent classes of deportable aliens. *See McNary v. Haitian Refugee Center, Inc.,* 498 U.S. 479, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991); *Jean v. Nelson* 727 F.2d 957 (11th Cir.1984)(class action brought by Haitian aliens alleging illegal INS detention).

In addition, Mecca argues that the Plaintiffs are inadequate because they have

---

Rule 23(b)(3). That rule states that class certification is permissible only when "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Defendants argue that because the named plaintiffs lack standing, determining which other members of the putative class would require "individualized inquiries and mini-trials" as to each individual's immigration status, thus destroying the cohesion of the class. (Defendants' Response at 20). As discussed above in the context of *Hoffman, Sure–Tan,* and *Patel,* the immigration status of the members of the class will not defeat certification in this case. As such, the Plaintiffs' motion survives Rule 23(b)(3).

worked in violation of federal labor laws and therefore are not credible. The court at this time is not willing to engage in a premature inquiry of the credibility of potential witnesses.

 Finally, Defendants assert that the putative class representatives because they do not possess a sufficient level of knowledge and understanding to be able to control or prosecute the litigation pursuant to Rule 23(a). However, as held in *Surowitz v. The Hilton Hotels Corp.*, 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966), the Supreme Court found the plaintiff in a shareholder class action suit to be an adequate class representative despite her "positive disavowal of any relevant knowledge or information other than the fact of her stock ownership." *Surowitz*, 383 U.S. at 372, 86 S.Ct. 845. Although the representative must have more knowledge than a lay person about the case *In re Telectronics Pacing Systems, Inc.*, 168 F.R.D. 203 (S.D.Ohio 1996), the Court is persuaded that the individuals' understanding of the basic nature of their claims survives the *Surowitz* standard. Plaintiffs have sufficiently established that they can adequately represent the class.

## Conclusion

Upon review of the record, it is the Court's opinion that the Plaintiffs have established the prerequisites for class certification pursuant to Fed.R.Civ.P. 23(a). Accordingly, it is

ORDERED AND ADJUDGED that the Plaintiffs' Motion for Class Certification (DE# 34) is hereby GRANTED.