SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

## <u>Sergio Lopez v. Marmic LLC</u> (A-27-24) (089632)

**Argued October 6, 2025 -- Decided March 19, 2026**

**CHIEF JUSTICE RABNER, writing for a unanimous Court.**

In this appeal, the Court considers whether the Federal Immigration Reform and Control Act of 1986 (IRCA), which bars employers from hiring and continuing to employ undocumented individuals who are not lawfully admitted or authorized to work in the United States, conflicts with State wage and hour laws that require employers to pay minimum wages and overtime to employees.

Defendant Mike Ruane owned defendant Marmic LLC, a realty management company. In June 2015, Ruane hired plaintiff Sergio Lopez as the superintendent of two buildings Marmic owned in Newark. When Lopez applied for the job, he provided an invalid Social Security number (SSN) on a W-4 form.

Ruane testified that he initially offered Lopez $400 per week as well as an apartment. Lopez was to "reimburse" Ruane $800 per month for the value of the basement apartment. Lopez was paid for the first two weeks. Ruane testified that after he discovered the SSN was invalid, he told Lopez he could not pay him because that would be "against the law." Instead, Ruane offered to let Lopez live in the apartment rent-free for "perform[ing] the duties . . . we asked him to do, in return."

Lopez continued to work and live in the apartment until December 2018. At trial, Ruane agreed that Lopez performed the tasks Lopez had testified about. Ruane did not keep track of the number of hours Lopez worked, and neither party presented any written records about his hours. Marmic maintained no records relating to Lopez's employment. Marmic fired Lopez in December 2018. Lopez filed a complaint against Marmic and Ruane in September 2019, alleging violations of state wage laws.

The trial court dismissed Lopez's claims with prejudice. It acknowledged the nature of the parties' barter agreement and concluded that Lopez had not "met [his] burden of proof." First, the court did not find Lopez "credible or believable" because Lopez had knowingly listed an invalid SSN. The court also determined that Lopez did not carry his burden because he did not "articulate[]" with "any specificity" the "total number of hours worked." The Appellate Division affirmed the trial court's judgment. The Court granted certification. 260 N.J. 4 (2025).

1

**HELD:** Federal and State law do not conflict in this regard: if an employer hires an undocumented worker in violation of federal law, the employer is required to compensate the person in a manner consistent with state law for work they actually perform. Here, neither Lopez's immigration status nor the barter arrangement with his employer provided grounds to deny his wage claim for work already performed. The Court provides guidance about an employer's record-keeping burden and about how to assess the admissibility of evidence of an invalid SSN in wage and hour cases.

1. New Jersey's Wage and Hour Law (WHL) requires employers to pay the minimum wage established by law and to pay overtime for work in excess of 40 hours per week. N.J.S.A. 34:11-56a4(a), (b)(1). Under New Jersey's Wage Payment Law (WPL), employers must "pay the full amount of wages due" an employee "at least twice" each "month, on regular paydays" fixed in advance. N.J.S.A. 34:11-4.2. Neither law excludes undocumented workers from its reach. The Department of Labor represents that it "consistently enforces the WHL and WPL without regard to immigration status." IRCA, meanwhile, states that "[i]t is unlawful . . . to hire . . . for employment in the United States an alien knowing the alien is an unauthorized alien . . . with respect to such employment." 8 U.S.C. § 1324a(a)(1)(A). IRCA also makes it unlawful "to continue to employ [an] alien" knowing the person "is (or has become) an unauthorized alien." Id. at (a)(2). IRCA, however, does not expressly bar paying wages to undocumented workers for work they have already performed. Like other jurisdictions to consider the issue, the Court finds that IRCA does not preempt state workers' compensation and labor laws. The opposite conclusion -- that IRCA preempts state wage and hour protections -- would incentivize employers to hire undocumented immigrants and pay reduced wages despite laws to the contrary. As other courts have observed, such an outcome would undermine IRCA's primary goal to prevent the hiring of undocumented immigrants. (pp. 11-18)

2. In Hoffman Plastic Compounds, Inc. v. NLRB, the United States Supreme Court reversed an award of backpay to an undocumented immigrant, holding that such an award "runs counter to policies underlying IRCA," "trivializes the immigration laws," and "condones and encourages future violations." 535 U.S. 137, 149-50 (2002). As many other courts have concluded, Hoffman Plastic applies to backpay -- payment for work that has not actually been performed -- not to payment for work that employees have already performed. Unlike an award of backpay, payment for work already completed does not itself condone or continue an IRCA violation; it instead ensures that the employer does not take advantage of the violation. (pp. 18-21)

3. The Court rejects Marmic's contention that the parties' barter agreement -- a rent-free apartment in exchange for labor -- established a "legally distinct . . . relationship" outside of the employee-employer relationship contemplated by the WPL and WHL. There is no broad-based exception to New Jersey's wage and hour laws for "barter arrangements." As a result, Marmic's provision of a rent-free apartment in this case is not proof that it properly compensated Lopez for his labor. (pp. 22-24)

2

4. In considering Lopez's wage claim, the trial and appellate courts faulted Lopez for not presenting adequate proof of when he worked despite the legal obligation employers have to keep appropriate records. It is not disputed that Lopez did, in fact, perform work for Marmic. The WPL and WHL therefore required that Marmic make and preserve records of Lopez's hours and the wages paid to him. N.J.S.A. 34:11-4.6(e) (WPL); -56a20 (WHL). In administrative wage collection cases, a rebuttable presumption applies against employers who fail to abide by that requirement. N.J.S.A. 34:11-58(d). And in Anderson v. Mt. Clemens Pottery Co., the United State Supreme Court held that if an employee seeking unpaid wages "proves that he has in fact performed work" and "produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference," then the burden "shifts to the employer to come forward with evidence" to refute the employee's claims. 328 U.S. 680, 687-88 (1946). Here, the trial court did not follow the approach outlined in section 58(d) or Mt. Clemens. The Court remands to the trial court to determine the appropriate amount of damages. Because Marmic "fail[ed] to provide sufficient employee records, . . . there shall be a rebuttable presumption that the employee worked for the employer for the period of time and for the amount of wages as alleged in the wage claim." N.J.S.A. 34:11-58(d). The trial court should determine whether to allow additional evidence on the amount of damages and whether Marmic is entitled to a credit for the fair value of the lodging it provided. (pp. 24-28)

5. Turning to the trial judge's decision to allow and consider testimony on Lopez's use of an invalid SSN, the Court reviews the relevant evidence rules. Like inquiries into a person's immigration status, testimony about the use of an invalid SSN -- which can serve as a proxy for a person's immigration status -- may inject undue prejudice, contrary to N.J.R.E. 403, into a case about wage and hour claims. The trial court here properly barred direct questioning about Lopez's immigration status. Yet the court went on to rely heavily on Lopez's use of an invalid SSN to dismiss his lawsuit on credibility grounds. Under the circumstances, admitting evidence of Lopez's use of an invalid SSN led directly to the dismissal of his case -- even though his employer conceded he had performed work without being paid wages for several years. The Court does not foreclose the admission of evidence of the use of an invalid SSN to obtain employment in all wage and hour cases. Going forward, courts must carefully assess such evidence under N.J.R.E. 403 prior to trial. If there is no legitimate purpose other than to provide a link to a person's immigration status, the evidence should be excluded. In the rare case when such evidence is admitted at a jury trial, trial courts must provide appropriate cautionary instructions as to how evidence of an invalid SSN may be used. The Court's ruling is limited to wage and hour cases and does not address the admissibility of evidence in other settings. (pp. 28-35)

**REVERSED and REMANDED to the trial court.**

**JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, FASCIALE, NORIEGA, and HOFFMAN join in CHIEF JUSTICE RABNER's opinion.**

3

Sergio Lopez,

Plaintiff-Appellant,

v.

Marmic LLC, and
Mike Ruane, individually,

Defendants-Respondents.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|--------|---------|
| October 6, 2025 | March 19, 2026 |

Andrew C. Weiss of the New York bar, admitted pro hac vice, argued the cause for appellant (Borrelli & Associates, attorneys; Anthony P. Consiglio and Andrew C. Weiss, on the briefs).

Joseph A. Deer argued the cause for respondents (Bashwiner and Deer, attorneys; Joseph A. Deer, of counsel and on the briefs).

Eve E. Weissman, Deputy Attorney General, argued the cause for amicus curiae New Jersey Department of Labor and Workforce Development (Matthew J. Platkin, Attorney General, attorney; Jeremy M. Feigenbaum, Solicitor General, Shankar Duraiswamy, Deputy Solicitor General, and Sookie Bae-Park and Mayur P. Saxena, Assistant Attorneys General, of counsel, and Eve E.

Weissman, Nathaniel I. Levy, Marc D. Peralta, and Sara Vasquez, Deputy Attorneys General, on the briefs).

Lauren W. Herman submitted a brief on behalf of amici curiae Make the Road New Jersey, Legal Aid at Work, National Employment Law Project, American Civil Liberties Union of New Jersey, Comité de Apoyo a los Trabajadores Agrícolas, Laundry Workers Center, Laborers Eastern Region Organizing Fund, Legal Services of New Jersey, New Labor, New Jersey Alliance for Immigrant Justice, Service Employees International Union Local 32BJ, and Volunteer Lawyers for Justice (Make the Road New Jersey, attorneys; Lauren W. Herman, Joseph S. Niver, Christopher Ho (Legal Aid at Work) of the California bar, admitted pro hac vice, Laura Alvarenga Scalia (Legal Aid at Work) of the California bar, admitted pro hac vice, Marisa Díaz (National Employment Law Project) of the California bar, admitted pro hac vice, and Cassandra Gomez (National Employment Law Project) of the New York bar, admitted pro hac vice, on the brief).

Miriam S. Edelstein submitted a brief on behalf of amicus curiae New Jersey Association for Justice (Costello, Mains & Silverman, attorneys; Miriam S. Edelstein, of counsel and on the brief).

Jonathan Romberg submitted a brief on behalf of amicus curiae Seton Hall University School of Law Center for Social Justice (Seton Hall University School of Law Center for Social Justice, attorneys; Jonathan Romberg, of counsel and on the brief).

Joanne Gottesman submitted a brief on behalf of amici curiae Law and Labor Professors (Rutgers Law School, attorneys; Joanne Gottesman and Alia Al-Khatib (University of Pennsylvania Carey Law School) of the Pennsylvania and Texas bars, admitted pro hac vice, on the brief).

This appeal involves the interplay between two sets of legal requirements.  Federal law bars employers from hiring and continuing to employ undocumented individuals who are not lawfully admitted or authorized to work in the United States.  8 U.S.C. § 1324a(a)(1)(A), (a)(2).  And State wage and hour laws require employers to pay minimum wages and overtime to employees.  N.J.S.A. 34:11-56a4(a), (b)(1).

Like the many other courts that have considered the question, we find the different sets of laws do not conflict in this regard:  if an employer hires an undocumented worker in violation of federal law, the employer is required to compensate the person in a manner consistent with state law for work they actually perform.  Otherwise, certain employers would be incentivized to hire undocumented workers -- which is precisely the opposite of what federal law seeks to accomplish -- and pay them less than the law requires.

In this case, it is undisputed that an undocumented individual worked for a realty management company as a superintendent.  The company paid him by way of a barter arrangement -- a rent-free apartment in exchange for his labor -- instead of paying hourly wages and overtime.  As a general rule, that type of

barter arrangement does not satisfy New Jersey's wage and hour laws, aside from limited exceptions.

After several years, the employee brought a claim for wages and overtime against his employer for hours he had already worked. The trial court dismissed the claim. Among other things, the court found the employee was not credible because of his use of an invalid Social Security number (SSN) when he first applied for the job. The court also faulted the employee for failing to produce sufficient evidence of the number of hours he had worked.

The Appellate Division affirmed the judgment of the trial court. We reverse. For his services as a superintendent, the undocumented worker was considered an employee under the broad scope of state law. N.J.S.A. 34:11-4.1(b), -56a1(f), (h). He was therefore entitled to appropriate wages for work he had already performed. Neither his immigration status nor the barter arrangement with his employer provided grounds to deny his wage claim for work already performed.

In addition, employers, not employees, have an obligation under state law to keep records of hours worked and wages paid to their employees. N.J.S.A. 34:11-4.6(e), -56a20. When employers fail to do so, a rebuttable presumption applies against them in wage claim cases. N.J.S.A. 34:11-58(d).

4

We also conclude it was error to consider evidence of the employee's use of an invalid SSN in the manner the trial court did. Because the use of an invalid SSN can serve as a proxy for a person's immigration status, we offer guidance about how to assess the admissibility of such evidence in wage and hour cases going forward.

We remand the matter to the Law Division to determine the appropriate amount of damages due.

I.

A.

We draw the following facts from the parties' testimony at a bench trial.

Defendant Mike Ruane owned defendant Marmic LLC, a residential and commercial realty management company. In June 2015, Ruane hired plaintiff Sergio Lopez to work as the superintendent of two buildings Marmic owned in Newark. The buildings had commercial and residential units.

When Lopez applied for the job, he provided an invalid SSN on a W-4 form. Employees are required to "furnish [their] employer with a signed" W-4 form on or before the date they begin employment. 26 C.F.R. § 31.3402(f)(2)-1(a)(1). "Every individual to whom a social security number has been assigned must include [the] number on" the W-4 form. Id. at -1(f)(2). A

5

person's SSN establishes their legal authorization to work in the United States. See 8 C.F.R. § 274a.2(b)(1)(v)(C)(1).

Ruane testified that he initially offered Lopez $1,600 per month in salary -- or $400 per week -- as well as an apartment. Lopez was to "reimburse" Ruane $800 per month for the value of the basement apartment.

Lopez was paid $400 per week for the first two weeks. Ruane testified that after he discovered the SSN was invalid, he told Lopez he could not pay him because that would be "against the law." Instead, Ruane offered to let Lopez live in the apartment rent-free, without having to pay the cost of utilities, for "perform[ing] the duties . . . we asked him to do, in return."

Lopez continued to work and live in the apartment. He testified that when he complained about not being paid wages, Ruane responded that Lopez "needed to fix [his] documents so that" he could be paid. The parties did not enter into a written employment or lease agreement.

Lopez testified he worked as a superintendent from June 15, 2015 until December 2018 and performed various maintenance tasks. He testified that he cleaned common areas, picked up garbage, removed snow and leaves, swept and mopped floors inside the building, painted apartments when tenants moved out, fixed leaks and broken pipes, helped tenants when repairs were needed,

6

and cleaned dryers and unclogged washing machines for commercial tenants, among other things. Lopez testified that he performed those tasks alone.

Ruane heard Lopez testify. When questioned afterward, Ruane agreed that Lopez performed the tasks he had testified about.

Lopez also testified that the hours he worked alternated between "long" and "short" weeks. For long weeks, he worked about 60 hours; for short weeks, he averaged 37 hours. Ruane testified he did not require Lopez to work a specific number of hours per week and never directed him to work more than 60 hours in a week. Ruane did not keep track of the number of hours Lopez worked, and neither party presented any written records at trial about his hours. Marmic maintained no records relating to Lopez's employment.

B.

Lopez filed a claim for unpaid wages with the Department of Labor in 2018. The Department reviewed the claim and leveled a $750 penalty for the following violations: "Records - No Records Provided" and "Unpaid Wages / Late Payment." Ruane contested the penalty, and the matter was settled in November 2018 for $250. The Department noted that Lopez could request a wage hearing for the balance of his claim. Marmic fired Lopez in December 2018.

7

Lopez filed a three-count complaint against Marmic and Ruane in September 2019. The complaint alleged (1) violations of the overtime and minimum wage provisions, contrary to N.J.S.A. 34:11-56a4, and (2) failure to pay full wages on a timely basis, contrary to N.J.S.A. 34:11-4.2.

The trial court conducted a bench trial on August 18, 2022. Lopez and Ruane both testified, and part of their testimony is summarized above. During the hearing, the court allowed testimony about Lopez's use of an invalid SSN but did not permit cross-examination about his immigration status.

The trial court dismissed Lopez's claims with prejudice in an oral ruling in March 2023. In recounting the facts, the court acknowledged the nature of the parties' barter agreement. It went on to identify several bases for concluding that Lopez had not "met [his] burden of proof." First, the court did not find Lopez "credible or believable." The court explained that he "admitted . . . he lied" when he listed an SSN on the W-4 form that "[h]e knew at the time . . . wasn't valid." The court also found that Lopez "waffled" when he was asked questions about the form on cross-examination.

Second, the court determined that, although Lopez "ultimately [had] the burden of proof" to show he was entitled to recovery, he did not "articulate[]" with "any specificity" the "total number of hours worked." Nor did he attempt to "reconstruct[]" the hours he worked from messages from tenants "he might

8

have had in his phone." The number of hours worked, the court stated, was "a matter of complete speculation."

The court also observed that Lopez "knew full well he wasn't qualified to earn those -- be paid those wages legally because he . . . was an undocumented alien."

The Appellate Division affirmed the trial court's judgment. The appellate court agreed that because Lopez "is an undocumented alien" and "was not eligible to work" under federal law, "there could be no employee-employer relationship between the parties." As a result, the court found that Lopez "was barred from relief and was precluded from recovering damages." In that context, the court referenced "the trial judge's determination that [Lopez] 'lied' when he completed and signed the W-4 form."

The Appellate Division noted that, under <u>Serrano v. Underground Utilities Corp.</u>, 407 N.J. Super. 253, 269-70 (App. Div. 2009), an undocumented worker is permitted to recover damages for work already performed. The appellate court nonetheless concluded that Lopez failed to satisfy his burden of proof to recover damages because he "failed to proffer any time sheets or other documents supporting the hours he worked." The court declined to apply the burden-shifting approach set forth in <u>Anderson v.</u>

<u>Mt. Clemens Pottery Co.</u>, 328 U.S. 680 (1946), which it explained "only applies where damages are certain."

The Appellate Division also found that testimony about Lopez's use of an invalid SSN was relevant under N.J.R.E. 401, and that the trial court did not abuse its discretion under N.J.R.E. 607 in admitting the evidence for impeachment purposes.

Finally, the Appellate Division agreed with the trial court that "a barter arrangement was created after defendants discovered" that Lopez had provided an invalid SSN. The appellate court did not accept Lopez's "attempt[] to argue that an employer-employee relationship continued to exist" afterward.

### C.

We granted Lopez's petition for certification. 260 N.J. 4 (2025). We also granted the following entities leave to appear as friends of the court: the New Jersey Department of Labor and Workforce Development; Make the Road New Jersey, Legal Aid at Work, National Employment Law Project, American Civil Liberties Union of New Jersey, Comité de Apoyo a los Trabajadores Agrícolas, Laborers Eastern Region Organizing Fund, Laundry Workers Center, Legal Services of New Jersey, New Jersey Alliance for Immigrant Justice, New Labor, Service Employees International Union Local 32BJ, and Volunteer Lawyers for Justice (collectively, Make the Road); the New Jersey

10

Association for Justice; Seton Hall University School of Law Center for Social Justice (Seton Hall); and Law and Labor Professors (Professors).

## II.

### A.

Several statutes lie at the heart of this appeal. We summarize certain parts of the laws here to provide a backdrop for what follows. We review questions of statutory interpretation de novo. Krug v. State Parole Bd., 261 N.J. 477, 485-86 (2025).

New Jersey's Wage and Hour Law (WHL), N.J.S.A. 34:11-56a to -56a43, "protect[s] employees from unfair wages and excessive hours." Hargrove v. Sleepy's, LLC, 220 N.J. 289, 304 (2015) (quotation omitted). The law also protects employees and employers alike from "unfair competition resulting from wage levels detrimental to [one's] . . . well-being." N.J.S.A. 34:11-56a. The statute requires employers to pay the minimum wage established by law. N.J.S.A. 34:11-56a4(a). It also directs employers to pay overtime "for each hour of working time in excess of 40 hours in any week." Id. at (b)(1).

New Jersey's Wage Payment Law (WPL), N.J.S.A. 34:11-4.1 to -4.15, "governs the time and mode of payment of wages due to employees." Musker v. Suuchi, Inc., 260 N.J. 178, 186 (2025) (quoting Maia v. IEW Constr. Grp.,

257 N.J. 330, 344 (2024)).  Under the statute, employers must "pay the full amount of wages due" an employee "at least twice" each "month, on regular paydays" fixed in advance.  N.J.S.A. 34:11-4.2.

Both statutes are remedial and should be liberally construed.  See Hargrove, 220 N.J. at 303-04.  Both also extend broadly to anyone "suffered or permitted to work by an employer."  N.J.S.A. 34:11-4.1(b) (WPL), -56a1(f) (WHL) (using parallel language).  Neither law excludes undocumented workers from its reach.  The Department of Labor represents that it "consistently enforces the WHL and WPL without regard to immigration status."

We also draw on case law that interprets the federal Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 to 219.  All three statutes -- the FLSA, WHL, and WPL -- "address . . . fundamental terms of the employment relationship."  Hargrove, 220 N.J. at 313; see also Garcia v. Freedom Mortg. Corp., 790 F. Supp. 2d 283, 288 n.7 (D.N.J. 2011) ("The NJWHL is patterned after the FLSA, and New Jersey courts look to the FLSA regulations for guidance."  (citing Marx v. Friendly Ice Cream Corp., 380 N.J. Super. 302, 309 (App. Div. 2005))).

## B.

The Immigration Reform and Control Act of 1986 (IRCA), 8 U.S.C. § 1101 et seq., is designed, in part, to "prohibit[] the employment of illegal aliens in the United States." Hoffman Plastic Compounds, Inc. v. NLRB, 535 U.S. 137, 147 (2002). To that end, IRCA states that "[i]t is unlawful . . . to hire . . . for employment in the United States an alien knowing the alien is an unauthorized alien . . . with respect to such employment." 8 U.S.C. § 1324a(a)(1)(A). The phrase "unauthorized alien" refers to individuals not "lawfully admitted for permanent residence" or "authorized to be . . . employed by this chapter or by the Attorney General." Id. at (h)(3).

Among other provisions, IRCA also makes it unlawful "to continue to employ [an] alien" knowing the person "is (or has become) an unauthorized alien." Id. at (a)(2). The statute, however, does not expressly bar paying wages to undocumented workers for work they have already performed.

## III.

Lopez maintains that he and Marmic had an employee-employer relationship under the WHL and WPL. He contends that his undocumented status did not nullify that relationship, and that IRCA does not bar "wage claims by undocumented workers for labor [they] already provided." Lopez also argues that his barter arrangement with Marmic did not change the nature

13

of their relationship.  Finally, Lopez contends it was error for the trial court to permit testimony about his knowing use of an invalid SSN, which served as a proxy for his immigration status.

Marmic disputes that it had any employment relationship with Lopez. Marmic cites to the Appellate Division's ruling and maintains that, because Lopez was "an undocumented alien" under IRCA, there could not be an "employee-employer relationship between the parties."  Marmic contends that its barter arrangement with Lopez was a "legally distinct . . . relationship."  In any event, Marmic submits that Lopez's wage claim cannot prevail in light of Hoffman Plastic.

Marmic also maintains that the trial court did not err in allowing testimony about Lopez's "knowingly lying in completing the W-4 form," which Marmic claims had "nothing to do with his immigration status."

All of the amici argue in support of Lopez.  The Department of Labor, Make the Road, Seton Hall, and the Professors contend that IRCA does not foreclose Lopez's ability to recover unpaid wages for work he already performed.  All amici also note that the WPL and WHL broadly define "employee" without regard to whether an employee and employer have entered into a barter agreement.

14

Several amici maintain it was error to consider evidence of Lopez's use of an invalid SSN, which they contend served as a proxy for his undocumented status. They submit that a rule allowing such evidence would dissuade others from filing legitimate wage and hour claims.

IV.

Marmic argues that federal law precludes recovery here. At the same time, Marmic states it is not relying on the doctrine of federal preemption. We briefly address federal preemption for the sake of clarity and completeness.

A.

Under the United States Constitution, federal law "shall be the supreme Law of the Land," U.S. Const. art. VI, cl. 2, and shall prevail "if there is any conflict [with] state law," Gonzales v. Raich, 545 U.S. 1, 29 (2005). But "the historic police powers of the States [are] not to be superseded by [a] Federal Act unless that was the clear and manifest purpose of Congress." Altria Grp., Inc. v. Good, 555 U.S. 70, 77 (2008) (first alteration in original) (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)).

The latter principle "applies with particular force when Congress has legislated in a field traditionally occupied by the States." Ibid. And a state's authority to enact wage laws that regulate and protect workers falls within its

historic police powers. <u>Fort Halifax Packing Co. v. Coyne</u>, 482 U.S. 1, 21 (1987); <u>Bedoya v. Am. Eagle Express Inc.</u>, 914 F.3d 812, 818 (3d Cir. 2019).

Acts of Congress preempt state law under the Supremacy Clause in three situations, <u>English v. Gen. Elec. Co.</u>, 496 U.S. 72, 78 (1990), none of which apply here. Federal law does not expressly preempt the WHL and WPL. <u>See ibid.</u> Federal law is not meant to occupy the field of state employment laws like the WHL and WPL. <u>See id.</u> at 79; <u>Fort Halifax</u>, 482 U.S. at 21. And federal law does not actually conflict with New Jersey's wage and hour laws. <u>See English</u>, 496 U.S. at 79. As we discuss further below, it is not "impossible . . . to comply with" the WHL and WPL and also with IRCA. <u>See ibid.</u> The New Jersey statutes do not "stand[] as an obstacle" to Congress' objectives. <u>See Fla. Lime & Avocado Growers, Inc. v. Paul</u>, 373 U.S. 132, 141 (1963) (quotation omitted) (upholding a state agricultural regulation against Supremacy Clause challenge).

Other jurisdictions have similarly found that IRCA does not preempt state workers' compensation and labor laws. <u>See, e.g.</u>, <u>Madeira v. Affordable Hous. Found., Inc.</u>, 469 F.3d 219, 249 (2d Cir. 2006) (finding that IRCA does not preempt claims by undocumented workers under New York's workers' compensation law); <u>Sanchez v. Dahlke Trailer Sales, Inc.</u>, 897 N.W.2d 267, 276 (Minn. 2017) (Minnesota statute); <u>Design Kitchen & Baths v. Lagos</u>, 882

16

A.2d 817, 830 (Md. 2005) (Maryland statute); Dowling v. Slotnik, 712 A.2d 396, 405 (Conn. 1998) (Connecticut statute); Cont'l PET Techs., Inc. v. Palacias, 604 S.E.2d 627, 631 (Ga. Ct. App. 2004) (Georgia statute); Coma Corp. v. Kan. Dep't of Labor, 154 P.3d 1080, 1087 (Kan. 2007) (Kansas statute).

The opposite conclusion -- that IRCA preempts state wage and hour protections -- would incentivize employers to hire undocumented immigrants and pay reduced wages despite laws to the contrary. As other courts have observed, such an outcome would undermine IRCA's primary goal to prevent the hiring of undocumented immigrants. See, e.g., Lucas v. Jerusalem, LLC, 721 F.3d 927, 936 (8th Cir. 2013) (explaining that "the purpose of federal immigration policy" is "advance[d]" by eliminating the payment of wages below minimum wage); Patel v. Quality Inn S., 846 F.2d 700, 704 (11th Cir. 1988) ("[T]he FLSA's coverage of undocumented aliens is fully consistent with the IRCA and the policies behind it. . . . If the FLSA did not cover undocumented aliens, employers would have an incentive to hire them."); Salas v. Sierra Chem. Co., 327 P.3d 797, 808 (Cal. 2014) ("It would frustrate rather than advance the policies underlying federal immigration law to leave unauthorized alien workers so bereft of state labor law protections that employers have a strong incentive to 'look the other way' and exploit a black market for illegal labor."); Serrano, 407 N.J. Super. at 271 ("[R]equiring

17

employers to pay proper wages to undocumented aliens when the work had been performed actually furthers the goal of the IRCA" by leaving "virtually no incentives . . . for an employer to hire an undocumented alien in the first instance." (quoting Flores v. Amigon, 233 F. Supp. 2d 462, 464 (E.D.N.Y. 2002))).

B.

Marmic relies on Hoffman Plastic in support of its position that IRCA bars Lopez's wage claim. Hoffman Plastic involved an undocumented immigrant, Jose Castro, who was laid off after he engaged in union organizing activities. 535 U.S. at 140. The National Labor Relations Board later found that his employer, Hoffman Plastic Compounds, had violated the National Labor Relations Act (NLRA) by "rid[ding] itself of known union supporters." Ibid. As part of its award, the Board ordered Hoffman to reinstate Castro and pay him backpay. Id. at 140-41.

At a compliance hearing before an Administrative Law Judge (ALJ), Castro admitted he was not born, or authorized to work, in the United States. Id. at 141. As a result, the ALJ concluded the relief awarded conflicted with IRCA. Ibid. Four years later, the Board reversed and found that Castro was entitled to backpay plus interest. Id. at 141-42. The Board calculated the

18

"backpay award from the date of Castro's termination to the date Hoffman first learned of Castro's undocumented status." Id. at 142.

The United States Supreme Court reversed. It noted "[t]he Board asks that we . . . award backpay to an illegal alien for years of work not performed [and] for wages that could not lawfully have been earned." Id. at 148-49 (emphases added). In response, the Court found "that awarding backpay to illegal aliens runs counter to policies underlying IRCA." Id. at 149. The Court added that "awarding backpay in a case like this not only trivializes the immigration laws, it also condones and encourages future violations." Id. at 150.

Notably, Hoffman Plastic did not focus on an award of wages for work that had already been performed. The opinion instead reversed an award for wages an employee would have earned had he not been terminated unlawfully. But Castro, the Supreme Court noted, could not continue to work "without triggering new IRCA violations." Id. at 151.

We read Hoffman Plastic in the same way many other courts have read the decision. Its rationale applies to backpay -- payment for work that has not actually been performed[1] -- not to the payment of minimum wages or overtime

---

[1] "Back pay seeks to make an employee whole by awarding wages that would have been earned but for an unlawful firing." Martinez v. Mecca Farms, Inc., 213 F.R.D. 601, 604 (S.D. Fla. 2002) (emphasis added); see also 11

19

for work that employees have already performed.  See, e.g., Lucas, 721 F.3d at 933 ("[A]liens, authorized to work or not, may recover unpaid and underpaid wages under the FLSA."); Patel, 846 F.2d at 705-06 (distinguishing an "attempt[] to recover back pay for being unlawfully deprived of a job" from "seek[ing] to recover unpaid minimum wages and overtime for work already performed" and noting that "[n]othing in the FLSA suggests that undocumented aliens cannot recover unpaid minimum wages and overtime under the act"); Lamonica v. Safe Hurricane Shutters, Inc., 711 F.3d 1299, 1307-08 (11th Cir. 2013) (reaffirming the holding in Patel after Hoffman Plastic); Madeira, 469 F.3d at 243 & n.23 (citing rulings from United States District Courts in six districts that "concluded, even after Hoffman Plastic, that IRCA does not preclude . . . FLSA awards" "for labor actually and already performed" by undocumented workers).

---

Employment Coordinator Labor Relations § 43:59 (Dec. 2025 update) ("Backpay is most often awarded when an employer unlawfully discharges an employee," with the goal of "reimbursing the employee for earnings lost by reason of the wrongful termination."); 5 Larson on Employment Discrimination § 92.06 (2025) (noting that an award of backpay is ordinarily "based on the amount which, but for the discrimination, would have been earned" (emphasis added)); Zanetich v. Wal-Mart Stores E., Inc., 123 F.4th 128, 152 (3d Cir. 2024) (Freeman, J., concurring in part and dissenting in part) ("Back pay is measured from the date of [an employee's] discharge to the date of the verdict." (quotation omitted)).

20

Unlike an award of backpay for work not yet performed, payment for work already completed "does not itself condone . . . or continue" an IRCA violation; it instead "ensures that the employer does not take advantage of the violation." Madeira, 469 F.3d at 243.

The Appellate Division has applied the same principle. In Serrano, the appellate court recognized that "undocumented workers can recover damages arising out of statutory violations for 'work already performed,' such as wage claims under the FLSA." 407 N.J. Super. at 269-70 (quoting Crespo v. Evergo Corp., 366 N.J. Super. 391, 398 (App. Div. 2004)). Crespo involved a claim under the state's Law Against Discrimination. In that case, the Appellate Division held that undocumented workers could not recover backpay or prospective damages that stemmed from their termination, pursuant to Hoffman Plastic. 366 N.J. Super. at 401-02. Crespo distinguished its holding from claims relating to work already performed, including FLSA claims for wages. Id. at 398 (citing cases).

For all those reasons, we conclude that Hoffman Plastic does not preclude Lopez's claim for unpaid wages. We therefore turn to his claim.

21

V.

A.

Marmic raises a threshold question here as well. It contends that the parties' barter agreement -- a rent-free apartment in exchange for labor -- established a "legally distinct . . . relationship" outside of the employee-employer relationship contemplated by the WPL and WHL. As a result, Marmic maintains that the Appellate Division correctly found "there could be no employee-employer relationship between the parties."

Marmic's argument finds no support in the law. The type of arrangement Marmic and Lopez had neither satisfied nor voided the State's wage and hour laws.

The WPL and WHL apply broadly to anyone "suffered or permitted to work by an employer." N.J.S.A. 34:11-4.1(b) (WPL), -56a1(f) (WHL) (using parallel language). That standard provides "the broadest definition of 'employee' among the various pieces of social legislation." Hargrove, 220 N.J. at 313; see also Sec'y of Labor v. Lauritzen, 835 F.2d 1529, 1543 (7th Cir. 1987) (Easterbrook, J., concurring) ("'suffer or permit to work' . . . sweeps in almost any work done on the employer's premises" and "potentially any work done for the employer's benefit or with the employer's acquiescence"). Under

22

the facts of this case, Marmic plainly "suffered or permitted" Lopez to work as a superintendent at its buildings.

New Jersey statutes also restrict the use of alternative arrangements. The WPL, for example, makes clear that barter arrangements cannot substitute for the statute's requirements:

> It shall be unlawful for any employer to enter into or make any agreement with any employee for the payment of wages of any such employee otherwise than as provided in this act . . . . Every agreement made in violation of this section shall be deemed to be null and void . . . .
>
> [N.J.S.A. 34:11-4.7.]

The WHL similarly notes that "any contract, agreement or understanding for" employment "at an oppressive and unreasonable wage . . . shall be void." N.J.S.A. 34:11-56a3.

The law does permit other forms of payment. The WHL, for example, allows "the fair value of any food or lodging supplied by an employer" to be counted toward wages. N.J.S.A. 34:11-56a1(d); see also N.J.A.C. 12:56-8.6 (regarding the computation of fair market value), -8.8 (providing examples). But those in-kind payments are a way to satisfy an employer's obligation to pay appropriate wages based on an hourly rate -- not a way around the law's requirements. In other words, the WHL does not sanction the use of barter arrangements as a general tool to avoid wage and hour requirements.

23

Limited exceptions to the WHL for summer camps, conferences, and retreats operated by nonprofit or religious groups do not apply here. See N.J.S.A. 34:11-56a4.1. Nor do exceptions for independent contractors and subcontractors, among others.[2] See N.J.S.A. 34:11-4.1(b) (WPL); N.J.A.C. 12:56-16.1 (WHL). In short, there is no broad-based exception to New Jersey's wage and hour laws for "barter arrangements." As a result, Marmic's provision of a rent-free apartment in this case is not proof that it properly compensated Lopez for his labor.

B.

In rejecting Lopez's claim for unpaid wages, the trial court and the Appellate Division faulted Lopez for not presenting adequate proof of when he worked. In doing so, the courts overlooked the legal obligation employers have to keep appropriate records.

Although the parties do not agree on how many hours Lopez worked, it is not disputed that he did, in fact, perform work for Marmic. The WPL and WHL therefore required that Marmic make and preserve records of Lopez's

---

[2] The "ABC" test, N.J.S.A. 43:21-19(i)(6)(A) to (C), "governs whether a plaintiff is an employee or independent contractor for purposes of resolving a wage-payment or wage-and-hour claim" under the WPL and WHL. Hargrove, 220 N.J. at 295. The test does not apply here because Marmic does not assert that Lopez was an independent contractor.

24

hours and the wages paid to him.  N.J.S.A. 34:11-4.6(e) (WPL); -56a20

(WHL).

In administrative wage collection cases, a rebuttable presumption applies

against employers who fail to abide by that requirement:

> Upon an investigation of a wage claim initiated pursuant to this section or any of the other State wage and hours laws, if an employer fails to provide sufficient employee records, as required to be kept under any State wage and hour laws, there shall be a rebuttable presumption that the employee worked for the employer for the period of time and for the amount of wages as alleged in the wage claim.
>
> [N.J.S.A. 34:11-58(d) (section 58(d)).]

Marmic conceded at trial that it neither made nor kept records of the hours

Lopez worked.

Section 58(d) is consistent with the standard articulated by the United

States Supreme Court in Mt. Clemens.  As the Court explained in that case,

employees who seek relief under the FLSA for unpaid minimum wages or

overtime have the burden to prove that they "performed work for which [they]

were] not properly compensated."  328 U.S. at 686-87.  But "it is the employer

who has the duty under . . . the Act to keep proper records of wages [and]

hours" worked.  Id. at 687.

If an "employer's records are inaccurate or inadequate . . . , [t]he

solution . . . is not to penalize the employee by denying him any recovery on

25

the ground that he is unable to prove the precise extent of uncompensated work." Ibid. In such cases, the Court held,

> an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.
>
> [Id. at 687-88.]

The Court underscored that "employer[s] cannot be heard to complain that the damages lack the exactness and precision" that could have been measured had they, the employers, kept the records the FLSA required. Id. at 688. The Court also stressed that the result of its holding did not run afoul of "the rule that precludes the recovery of uncertain and speculative damages. That rule applies only to situations where the fact of damage is itself uncertain." Ibid. (emphases added). As the Court further explained, "assuming that the employee has proved that he has performed work" for which he was not properly paid under the FLSA, the fact of damage is itself "certain"; "[t]he uncertainty lies only in the amount of damages" due. Ibid. (emphasis added).

26

Here, the trial court did not follow the approach outlined in section 58(d) or Mt. Clemens. Instead of applying a rebuttable presumption in Lopez's favor once it was clear that he had performed work for Marmic, the court faulted Lopez for "not articulat[ing] to any specificity" "[t]he total number of hours worked." In dismissing his claim, the court declined to "speculate" on "what the hourly wages were . . . or the total number of hours worked."

The Appellate Division likewise observed that Lopez "failed to proffer any time sheets or other documents supporting the hours he worked." The court did not hold Marmic responsible for not producing records. The court mistakenly noted that a "burden-shifting analysis only applies where damages" -- meaning the amount owed -- "are certain." Under Mt. Clemens, however, damages are "certain" -- and the burden shifts to the employer -- when it is clear that money is owed in some amount. See 328 U.S. at 688.

Once again, the evidence in this case reveals that Lopez performed work for Marmic. He testified about his duties, and Ruane agreed he performed those tasks. Ruane disputed the hours Lopez claimed but testified he could not "be sure" how many hours Lopez worked. And the company had no records to support its position. As the Court observed in Mt. Clemens, "[i]n such a case 'it would be a perversion of fundamental principles of justice to deny all relief

27

to the injured person.'" Ibid. (quoting Story Parchment Co. v. Paterson

Parchment Paper Co., 282 U.S. 555, 563 (1931)).

Under the circumstances, we remand to the trial court to determine the appropriate amount of damages. On remand, because Marmic "fail[ed] to provide sufficient employee records, . . . there shall be a rebuttable presumption that the employee worked for the employer for the period of time and for the amount of wages as alleged in the wage claim." N.J.S.A. 34:11-58(d). We defer to the court's discretion whether to reopen the evidentiary hearing and allow additional evidence on the amount of damages. The trial court should also determine whether Marmic is entitled to a credit for the fair value of the lodging it provided.

## VI.

## A.

We turn next to the trial judge's determination that Lopez was not credible. The court grounded its finding on Lopez's use of an invalid SSN.[3] It was error to dismiss his wage claim on that basis.

The trial court plainly stated its reasons for finding Lopez not "credible or believable":

---

[3] As noted in the previous section, the trial court also criticized Lopez for not being specific about the number of hours he worked.

28

*"He admitted that . . . when he . . . signed the W-4, he -- he lied. He basically knew that he was required to tell the truth and required to put down a valid Social Security number. He knew at the time he wrote the Social Security number that it wasn't valid."

*Lopez "waffled . . . and attempted to not exactly answer the questions" on cross-examination "regarding his signature on the [W-4] form just below the paragraph indicating that if [his response] was knowingly false, it was perjury." The court found that exchange "a basis of [Lopez's] lack of truth and veracity in his statements."

Ultimately, the trial court stated, "I don't find in any way, shape or form that the plaintiff's testimony in this case is credible." The Appellate Division found no error in the decision to allow and consider testimony on Lopez's use of an invalid SSN. The court found no abuse of discretion under N.J.R.E. 401 and 607.

### B.

We consider various rules of evidence to assess whether cross-examination about Lopez's use of an invalid SSN was appropriate in this case. To begin, Rule 401 defines "relevant evidence" as "evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action."

29

To establish a claim for wages and overtime pay, claimants must demonstrate that they were employees who performed work for which they were improperly compensated. 2 Employment Litigation in New Jersey § 16.12 (2026); see also Reich v. Gateway Press, Inc., 13 F.3d 685, 701 (3d Cir. 1994) (interpreting the FLSA). A person's immigration status is not relevant to determine those issues. Lopez therefore contends that "evidence of his undocumented status" was not relevant to his wage claims under Rule 401.

Yet Lopez's use of an invalid SSN was embedded in the narrative of this case. He completed a W-4 form to obtain employment with Marmic and provided an invalid SSN on the form. And Marmic changed its payment arrangement with Lopez when it learned the SSN was invalid.

Those facts do not answer the overall question of admissibility. With regard to Rule 401, though, Lopez was not questioned about an entirely collateral matter when he was asked about the form at the hearing.

The Appellate Division went on to consider Rule 607 briefly. Rule 607(a) states that, "[f]or the purpose of attacking or supporting the credibility of a witness, any party including the party calling the witness may examine the witness and introduce extrinsic evidence relevant to the issue of credibility, subject to the exceptions in (a)(1) and (2)." Subsection (a)(1) notes "[t]his provision is subject to Rules 405 and 608."

30

Rule 405 relates to methods of proving a person's character and is not relevant here. Rule 608(c) states, in part, that "extrinsic evidence is not admissible to prove specific instances of a witness' conduct in order to attack or support the witness' character for truthfulness." Under that rule, had Lopez used an invalid SSN in an unrelated matter years before, the evidence could not be used to impeach him in a later wage claim case. Cf. State v. Parker, 216 N.J. 408, 422 (2014) (holding that cross-examination about a defendant's prior use of false names in an unrelated matter was barred under Rule 608). In other words, that type of extrinsic evidence could not be used to challenge his character for truthfulness.[4]

In this case, the evidence in question was linked to Lopez's employment with Marmic. He presented an invalid SSN on a W-4 form to get a job as a superintendent. If evidence like that were generally admissible in wage and hour cases, a factfinder might conclude as the trial judge did here: that a claimant who lied about their SSN cannot be believed and is therefore not entitled to relief.

---

[4] Subsection (b) of Rule 608 has limited exceptions that allow for impeachment based on particular, prior false statements. The exceptions apply to criminal, not civil, matters. See Biunno, Weissbard & Zegas, N.J. Rules of Evidence, cmt. 4 on N.J.R.E. 608(b).

Such an outcome would, in effect, foreclose relief to Lopez and others --

individuals an employer hired knowing they lacked documents that authorized

them to be employed. But the law enables those individuals to be paid for

work they already performed, as discussed above. To find they are entitled to

payment if they lack an SSN, but <u>not</u> if they try to conceal that fact, would

deny them protections they are entitled to under the WHL and WPL.

C.

Those concerns elevate the importance of Rule 403 in our analysis. The

rule provides, in part, that "relevant evidence may be excluded if its probative

value is substantially outweighed by the risk of . . . [u]ndue prejudice,

confusion of issues, or misleading the jury." N.J.R.E. 403(a).

As we noted in <u>State v. Sanchez-Medina</u>, "evidence of a [person's]

undocumented immigration status could appeal to prejudice, inflame certain

jurors, and distract them from their proper role in the justice system: to

evaluate relevant evidence fairly and objectively." 231 N.J. 452, 462-63

(2018).

Years before <u>Sanchez-Medina</u>, Judge Carchman made a similar

observation in the context of wage claims:

> Credibility is the baseline in any litigation involving
> disputed issues of fact. My concern is that beyond
> credibility and unless directly relevant to the issues in
> dispute, inquiries into matters of immigration status,

32

including employment issues, are so fraught with the potential for undue prejudice that little more will be heard or considered after . . . inquiry into such status.

[Serrano, 407 N.J. Super. at 286 (Carchman, P.J.A.D., concurring).]

Like inquiries into a person's immigration status, testimony about the use of an invalid SSN to obtain employment may inject undue prejudice into a case about wage and hour claims for this reason: such evidence can serve as a proxy for a person's immigration status. It is widely known that undocumented workers who were not lawfully admitted to the United States or permitted to work here cannot obtain a Social Security number. See 20 C.F.R. § 422.104(a) (listing categories of individuals eligible for an SSN). A person's immigration status and lack of an SSN are thus commonly intertwined.

Some courts have barred requests for discovery of a plaintiff's SSN in FLSA cases because of the evidence's minimal probative value, potential for prejudice, and capacity to undermine the effectiveness of remedial wage and hour laws. Montoya v. S.C.C.P. Painting Contractors, Inc., 530 F. Supp. 2d 746, 750 (D. Md. 2008); Galaviz-Zamora v. Brady Farms, Inc., 230 F.R.D. 499, 501-02 (W.D. Mich. 2005) (noting "[t]here is no question that the disputed discovery requests," including an attempt to discover SSNs and cards, "are designed to uncover Plaintiffs' immigration status," which "is not relevant for purposes of . . . damages"); Flores, 233 F. Supp. 2d at 464-65.

33

The trial court here properly barred direct questioning about Lopez's immigration status. Yet the court went on to rely heavily on Lopez's use of an invalid SSN to dismiss his lawsuit on credibility grounds. The court also faulted Lopez by finding, in part, that he was an "undocumented alien" who was not entitled to "be paid . . . wages legally." Under the circumstances, admitting evidence of Lopez's use of an invalid SSN led directly to the dismissal of his case -- even though his employer conceded he had performed work without being paid wages for several years.

We do not foreclose the admission of evidence of the use of an invalid SSN to obtain employment in all wage and hour cases. Going forward, courts must carefully assess such evidence under Rule 403 prior to trial. If there is no legitimate purpose other than to provide a link to a person's immigration status, the evidence should be excluded. Courts should evaluate other reasons proffered to determine whether the probative value of the sensitive evidence is substantially outweighed by the risk of undue prejudice. N.J.R.E. 403(a).

In essence, a person's immigration status cannot directly or indirectly -- through testimony about the use of an invalid SSN -- form the basis to deny relief in the ordinary course of a wage and hour trial in which a person requests compensation for work already performed.

In the rare case when such evidence is admitted at a jury trial, trial courts must provide appropriate cautionary instructions, consistent with the above principles, as to how evidence of an invalid SSN may be used.  In doing so, courts may not comment on a claimant's immigration status.  For bench trials, courts should state on the record the basis for admitting the evidence.  See Biunno, Weissbard & Zegas, N.J. Rules of Evidence, cmt. 2 on N.J.R.E. 403 (2026) ("N.J.R.E. 403 is applicable in nonjury cases as well as jury trials.").

Our ruling is limited to wage and hour cases.  We do not address the admissibility of evidence in other settings.

\* \* \*

As noted above, we remand this matter to the trial court to determine the appropriate amount of damages.  Because the trial judge relied heavily on Lopez's use of an invalid SSN to make credibility findings against him, we remand to a different judge for further proceedings.

## VII.

For the reasons stated above, we reverse the judgment of the Appellate Division and remand to the trial court for further proceedings consistent with this opinion.

35

JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, FASCIALE, NORIEGA, and HOFFMAN join in CHIEF JUSTICE RABNER's opinion.